UNITED STATES v. NEW YORK CENT. & H. R. R. CO.    SAME v. NEW
    YORK CENT. & H. R. R. CO. et al. (two cases).    SAME
                     v. GUILFORD et al.

                 (Circuit Court, S. D. New York.    July 6, 1906.)

1. CARRIERS—INTERSTATE COMMERCE—REBATING—INDICTMENT.
        An indictment against a railroad company for violation of the interstate
    commerce act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St.
    1901, p. 3154]), as supplemented by the Elkins act (Act Cong. Feb. 19,
    1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), alleged
    that defendant published a sugar schedule for the transportation of sugar
    from New York to Cleveland at the rate of 21 cents per 100 pounds;
    that on a specified day the American Sugar Refining Company induced
    defendant to make an unlawful agreement to allow a rebate of 6 cents on
    sugar shipped by it to Cleveland for reconsignment, and 4 cents on sugar
    shipped to Cleveland as its ultimate destination; that the sugar company
    thereafter shipped various consignments, paid the schedule rate, and
    afterwards made claims on the railroad company, and was paid a rebate.
    Held, that such facts sufficiently showed a violation of the provisions of the
    act prohibiting deviations from the published rates.

2. SAME—OBSERVATION OF PUBLISHED TARIFF—WILLFUL FAILURE.
        An indictment against a railroad company and the agent of certain
    shippers, alleging that full schedule rates were first paid by the railroad
    company for the transportation of certain freight, and that thereafter
    $920.39 was paid to the shipper's agent by way of rebates and concessions
    in respect to the transportation of freight under a previously made un-
    lawful agreement, sufficiently charged that the payment of the rebate
    was a willful failure to observe the published tariff, and therefore stated
    a violation of the interstate commerce act (Act Cong. Feb. 4, 1887, c. 104,
    24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), as supplemented by the
    Elkins act (Act Cong. Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St.
    Supp. 1905, p. 599]).

3. SAME—PARTIES—JOINDER.
        Under the interstate commerce act (Act Cong. Feb. 4, 1887, c. 104, 24
    Stat. 379 [U. S. Comp. St. 1901, p. 3154]), as supplemented by the Elkins
    act (Act Cong. Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp.
    1905, p. 599]), providing that a corporation engaged in interstate commerce
    and its agents may be criminally liable for giving rebates, a carrier and its
    agents may be prosecuted for the same offense in a single indictment.

4. CONSPIRACY—CARRIERS—GIVING AND ACCEPTING REBATES—INDICTMENT.
        Under the Elkins act (Act Cong. Feb. 19, 1903, c. 708, 32 Stat. 847 [U.
    S. Comp. St. Supp. 1905, p. 599]), abolishing imprisonment as a punish-
    ment for offenses committed against the acts regulating interstate com-
    merce, an indictment alleging that the agents of a shipper and the agents
    of a railroad company engaged in interstate commerce stipulated to
    give and receive rebates on the transportation of sugar from New York
    to Detroit, and thereafter gave and received such rebates in pursuance
    of such fraudulent conspiracy, merely alleged a violation of the in-
    terstate commerce act as amended by the Elkins act, and was there-
    fore not sustainable as alleging a conspiracy to commit an offense against
    the United States, punishable by imprisonment, under Rev. St. § 5440 [U.
    S. Comp. St. 1901, p. 3676].

5. STATUTES—PROSPECTIVE OPERATION.
        Act Cong. June 29, 1906, amending the Elkins act (Act Cong. Feb. 19,
    1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]) by striking
    the provision abolishing imprisonment for offenses under the acts to regu-
    late commerce, and providing a punishment of imprisonment for a term
    not exceeding two years, etc., was prospective only in operation.

Henry L. Stimson, U. S. Atty., William S. Ball, J. Osgood Nichols, and Henry A. Wise, Asst. U. S. Attys.

Austen G. Fox and John D. Lindsay, for defendants New York Cent. & H. R. R. Co., Nathan Guilford, and Fred L. Pomeroy.

Michael H. Cardozo and Howard S. Gans, for defendants C. Goodloe Edgar and Edwin Earle.

HOLT, District Judge. These are demurrers to four indictments. The indictments are based on alleged violations of the act to regulate commerce, passed February 4, 1887, commonly called the "Interstate Commerce Act," and the various acts amending and supplementing it, including the act of February 19, 1903 (chapter 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), commonly called the "Elkins Act." Three of the indictments charge a giving or taking of rebates in violation of such act, and one a conspiracy to commit an offense against the United States by inducing the giving and taking of a rebate, in violation of such act. The demurrers were argued at the same time and will be considered together.

The indictment against the New York Central & Hudson River Railroad Company contains two counts. The first count charges, in substance, that the defendant was a railroad corporation engaged in the transportation of freight for hire over its own and connecting roads, between, among other points, New York and Cleveland, Ohio; that its freight schedule, published as required by the interstate commerce act, fixed the rate for freight on sugar from New York to Cleveland at 21 cents per 100 pounds; that on November 20, 1902, the officers of the American Sugar Refining Company, a New Jersey corporation, induced the defendant to enter into the unlawful agreement to allow the sugar company a rebate of 6 cents per 100 pounds on sugar shipped by it to Cleveland for reconsignment to further points, and 4 cents per 100 pounds on sugar shipped to Cleveland to go no further; that the sugar company shipped various consignments of sugar under said agreement over defendant's road and connecting roads to Cleveland, and paid the schedule rate of 21 cents per 100 pounds; that afterwards claims for rebate on said shipments were presented by the sugar company to the defendant, upon which, on April 2, 1903, the defendant paid to the sugar company by way of rebate $26,141.81. The second count is substantially the same as the first, except that the allegations of a preliminary agreement to pay rebates is omitted. The demurrer to this indictment alleges, in substance, that the acts set forth in the indictment and in each count thereof do not constitute a crime under the laws of the United States, and that the indictment is not sufficiently definite and certain.

The principal objection to this indictment urged by the defendant's counsel is that the charge made in both counts, that an unlawful discrimination was made in favor of the sugar company against other persons, is not sufficiently pleaded, because no other person is named who was charged a larger rate, and reliance is put on the case of United States v. Hanley (D. C.) 71 Fed. 672. In that case it was held, in substance, that the interstate commerce act prohibited discrimination in rates between shippers, and also deviations from the schedule rates; that

if an indictment was based on alleged discriminations between different shippers it was not enough to show that a particular shipper was charged less than the scheduled rate, but the indictment must allege that some other person designated in the indictment had been charged a higher rate. The court held that, as the company might make an equal reduction to everybody from the scheduled rate, an allegation that a rebate from the scheduled rate had been returned to a particular shipper was not a sufficient allegation of an unlawful discrimination. If it were necessary to base the decision of this demurrer upon this point, I should hesitate to follow the decision in United States v. Hanley. I think that if a railroad company receives from a shipper the full schedule rate, and then repays him a percentage of the amount paid as a rebate, there is weighty ground to hold that it is presumptively guilty of illegal discrimination under the act; and that if in fact the railroad company has pursued the extremely improbable course of making a uniform reduction of its rates to everybody, while retaining a higher rate on its published schedules, no substantial injustice will be done to any defendant if he is left to prove that fact as part of his defense. But, without passing definitely upon this question, it is sufficient to say that the case of United States v. Hanley also held that the payment of a rebate from the schedule rates violated the provisions of the act prohibiting deviations from the published rates. The allegations of this indictment certainly support that charge sufficiently. In my opinion the indictment is sufficiently definite and specific, and I think that the demurrer to it should be overruled.

The indictment against the New York Central & Hudson River Railroad Company and Nathan Guilford charges, in substance, that at all the times stated in the indictment the railroad company's scheduled rate on sugar from New York to Detroit, Mich., was 23 cents per 100 pounds; that Guilford was the other defendant's traffic manager; that on October 15, 1902, Lowell M. Palmer and Thomas P. Riley, acting as agents of the American Sugar Refining Company and of the firm of W. H. Edgar & Son of Detroit, induced the railroad company and Guilford to agree to pay a rebate of 2 cents per 100 pounds on all sugar shipped by the sugar company to Edgar & Son; that shipments were thereafter made and the scheduled rates paid; that thereafter, on May 14, 1903, the defendants paid to said Palmer, as such agent, $920.-39 as a rebate. The grounds of demurrer to this indictment are that it is insufficient in law, and that the acts set forth in it do not constitute a crime. The objections urged in its support by counsel are that it does not properly allege that any discrimination resulted, that it does not allege any willful failure by the railroad company to observe the published tariff, and that the individual defendant is improperly joined with the corporation. The point of failure to properly allege discrimination I have already discussed under the first indictment considered. The fact that the indictment alleges that the full schedule rate was first paid to the railroad company, and that thereafter $920.39 was paid by the defendants to Palmer as agent for the shippers "by way of rebate and concession in respect to the transportation of said sugars under said unlawful agreement" is in my opinion a sufficient allegation that the

payment was a willful failure to observe the published tariff; and as the interstate commerce act as amended and the Elkins act provide that the corporation and its agents may be criminally liable for giving rebates, I do not see why these defendants cannot be prosecuted for the same offense in one indictment. I think, therefore, that the demurrer to the indictment against the railroad company and Guilford should be overruled.

The indictment against the New York Central & Hudson River Railroad Company, Nathan Guilford, and Fred L. Pomeroy is, in substance, similar to the one against the railroad company and Guilford, and the objections taken to it in the demurrer and the agreement of counsel are similar to the objections taken to the indictment in that case. I think, therefore, that the demurrer to this indictment should be overruled.

The indictment against Nathan Guilford, Fred L. Pomeroy, C. Goodloe Edgar, and Edwin Earle differs essentially from the three other indictments. It is an indictment for an alleged conspiracy under section 5440 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 3676]. This indictment charges, in substance, that the New York Central & Hudson River Railroad Company was engaged in the tranpsortation of freight for hire over an interstate route to Detroit, Mich., by its own and connecting lines; that it had published a schedule of rates over this route under the interstate commerce laws; that the rate for sugar from New York to Detroit was 23 cents per 100 pounds; that the American Sugar Refining Company and the American Sugar Refining Company of New York were corporations engaged in selling and shipping sugar from New York over said route; that the defendants Edgar and Earle with one James E. Edgar, now deceased, were a firm doing business in Detroit under the style of W. H. Edgar & Son; that the defendants Guilford and Pomeroy were traffic managers of the railroad company; that Palmer and Riley were agents both for the sugar companies and for Edgar & Son; that on April 1, 1904, at the Southern District of New York, the said Guilford, Pomeroy, James Edgar, C. Goodloe Edgar, and Earle, with other persons to the jurors unknown, conspired with each other and with said Palmer and Riley to commit an offense against the United States by causing and procuring the said railroad company to give rebates on sugar shipped by the sugar companies at New York to Edgar & Son at Detroit over the said route; that it was agreed by said conspirators that a rebate should be given on such shipments of 5 cents per 100 pounds; that sugars were so shipped, the carriage paid for at the scheduled rates, claims made for rebates, and the rebates paid by said Guilford and Pomeroy, acting in behalf of said railroad company, to said Palmer and Riley, acting in behalf of said sugar companies and Edgar & Son. The indictment also alleges as acts done to effect the object of the conspiracy that a letter was written by Pomeroy to Palmer stating the details of the agreement for rebates; that in July and August, 1904, Edgar & Son purchased certain sugars from the sugar companies, which Palmer and Riley caused to be shipped to them at Detroit, and paid for at the tariff rates; and that subsequently claims for rebates were presented, and certain checks paid for such rebates—

one check for $2,474.54, dated October 28, 1904, and one for $1,979.64, dated October 29, 1904.

Various objections under the demurrer are taken to this indictment. In my opinion the most serious of these objections is the claim that, Congress having by the Elkins act expressly abolished imprisonment as a penalty for any offense committed under the acts to regulate commerce, an indictment will not lie for a conspiracy to commit such an offense, which is an offense punishable by imprisonment.

Section 5440 of the United States Revised Statutes, under which this indictment is brought, provides as follows:

"If two or more persons conspire either to commit an offense against the United States, or to defraud the United States in any manner or for any purpose, and when one or more of such parties do any act to effect the object of the conspiracy, all of the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years, or to both fine and imprisonment in the discretion of the court."

The tenth section of the interstate commerce act, as amended (Act Feb. 4, 1887, c. 104, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3160]) previous to the Elkins act, provided that any common carrier, or, when it was a corporation, any director or officer thereof, or any receiver, trustee, lessee, agent, or person acting for such corporation, who should be convicted of the offense of an unlawful discrimination in rates, should be liable to a fine not to exceed $5,000, or to imprisonment not exceeding two years, or both. Any such carrier or person who by false billing, classification, weighing, or other device should willfully assist or willingly permit any person to obtain transportation for property at less than the regular rates should be subject to the same punishment of fine and imprisonment. False billing by shippers or inducing carriers to discriminate unjustly was subject to the same punishment. But the Elkins act, passed in 1903 (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), abolished the punishment of imprisonment in such cases, and substituted for it a heavier fine than that authorized by the interstate commerce act. The punishment for the willful failure of a carrier to file and publish the rates required by the act was made a fine of not less than $1,000 and not more than $20,000. It was made unlawful for any person or corporation to offer, grant, or give, or to solicit, accept, or receive, any rebate concession or discrimination, and the same punishment was fixed—a fine not less than $1,000 and not more than $20,000. The act then provides as follows:

"In all convictions occurring after the passage of this act for offenses under said acts to regulate commerce, whether committed before or after the passage of this act, or for offenses under this section, no penalty shall be imposed on the convicted party other than the fine prescribed by law, imprisonment wherever now prescribed as part of the penalty being hereby abolished."

Section 4 of the act (32 Stat. 849 [U. S. Comp. St. 1901, p. 601]) also provides "that all acts and parts of acts in conflict with the provisions of this act are hereby repealed."

It is impossible to deny that Congress intended in the Elkins act to abolish the penalty of imprisonment for the offense of giving or taking

rebates, and to substitute for the previous punishment a much heavier fine than that which could be inflicted under the interstate commerce act. If, therefore, the offense charged in this indictment is essentially the same offense as that created and punished in the interstate commerce acts and the Elkins act, this indictment, in my opinion, cannot be maintained. If Congress has made a certain action an offense and prescribed its punishment, the courts cannot, by giving it some other name, increase the punishment. The question in this case, therefore, is whether the offense charged in the indictment as constituting the crime of conspiracy differs from the offense described in the interstate commerce acts and the Elkins act as the giving and receiving of rebates punishable by a fine. In most cases, undoubtedly, a conspiracy to commit a crime is a distinct offense from the commission of the crime itself. This is true, of course, of all crimes committed by one person, for two persons, at least, are necessary for a conspiracy. Even if more than one person commits the crime, there may be others engaged in a conspiracy to have it committed who do not take part otherwise in the commission of the crime. But there are certain crimes which require for their commission the concurrent action and co-operation of more than one person. Such crimes as rioting, or duelling, or bigamy, for instance, cannot be perpetrated by one person, and persons who do not perpetrate them might take part in a conspiracy to cause them to be done. But when the concurrent action of two persons is necessary to perpetrate a certain crime, and all that they do is to agree to do it and to do it, it seems difficult to claim that their agreement to act is in law a conspiracy, and their act a distinct crime, and that the agreement to act can be punished more severely or differently from the act itself. I think that the offense of giving or receiving rebates is such an act. It requires the concurrence of two persons. A rebate cannot be given unless there is some one who agrees to receive it and who does receive it, and cannot be received unless there is some one who agrees to give it and who does give it. The claim that the agreement to give it is a conspiracy punishable by imprisonment, while the actual giving it is an offense only punishable by a fine, seems to me too subtle a distinction to be drawn in the administration of criminal law. This view is not without authority to support it. In each of the cases of Shannon v. Commonwealth, 14 Pa. 226, and in Miles v. State, 58 Ala. 390, a man and woman were indicted for a conspiracy to commit adultery with each other. It was held in each case that the conspiracy was the same thing as the substantive offense, and the indictments were quashed. Wharton, in commenting on these cases, says:

"When the law says a combination between two persons to affect a particular end shall be called, if the end be effected by a certain name, it is not lawful for the prosecution to call it by some other name; and when the law says such an offense—e. g., adultery—shall have a certain punishment, it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy. Of course, when the offense is not consummated, and the conspiracy is one which by evil means a combination of persons is employed to effectuate, this combination is of itself indictable; and hence persons combining to induce others to commit bigamy, adultery, incest, or duelling do not fall within this exception, and may be indicted for conspiracy." Wharton's Crim. Law, § 1339.

In Regina v. Boulton, 12 Cox, Cr. Cas. 93, Chief Justice Cockburn says:

"I am clearly of the opinion that when the proof intended to be submitted to a jury is proof of the actual commission of crime it is not the proper course to charge the parties with conspiracy to commit it; for that course operates, it is manifest, unfairly and unjustly against the parties accused. The prosecutors are thus enabled to combine in one indictment a variety of offenses, which if treated individually, as they ought to be, would exclude the possibility of giving evidence against one defendant to the prejudice of others."

In United States v. Dietrich and Fisher (C. C.) 126 Fed. 664, the indictment charged that the defendants entered into a conspiracy to commit an offense against the United States by agreeing that Dietrich, a member of Congress, should procure the appointment of Fisher as postmaster, and that Fisher should pay to Dietrich therefor a certain sum of money as a bribe. The court held that the indictment was bad, and in the opinion said:

"The making of such an agreement is not a conspiracy, within the terms of section 5440, but is a several and substantive offense, under section 1781 [U. S. Comp. St. 1901, p. 1212], upon the part of each of the parties, and this without the doing of any overt act in pursuance thereof. * * * As the tranaction is stated in the indictment, it was Dietrich who agreed to accept the bribe, not Dietrich and Fisher, and it was Fisher who agreed to give the bribe, not Fisher and Dietrich. The charge is not that two or more persons agreed among themselves to corruptly obtain the aid of another, a member of Congress, in securing the appointment of some aspirant to a federal office, nor is it that two or more members of Congress agreed among themselvse to obtain from another person a reward or compensation f r their services, or aid in securing such an appointment. * * * The agreement or transaction stated in the indictment was immediately and only between two persons, one charged with the intended taking, and the other with the intended giving, of the same bribe. Concert and plurality of agents in such an agreement or transaction are, in a sense, indispensable elements of the substantive offenses defined in section 1781 of agreeing to receive a bribe and of agreeing to give one. A person cannot agree with himself, receive from himself, or give to himself. The concurrent and several acts of two persons are necessary to the act of acquiring, receiving, or giving. * * * Because concert and plurality of agents, in the sense we have hereinbefore shown, are essential to each of the offenses—there are two, not one—the commission of which is charged to have been the object of this so-called conspiracy, and because no other concert and plurality of agents are here charged, we are of opinion that the acts described in this indictment do not constitute a conspiracy under section 5440."

And see Chadwick v. United States (C. C. A.) 141 Fed. 225, 236, where the Dietrich Case is cited with approval.

The counsel for the government assert that the Dietrich Case is to be distinguished from this case because in the Dietrich Case but two persons—the giver and taker of the bribe—were charged with the conspiracy in the indictment, while in the case at bar the indictment charges that seven persons named and others to the jurors unknown were parties to the conspiracy. But only four of the seven persons named are indicted, and of those four Guilford and Pomeroy represent simply the giver; and Edgar and Earle simply the receiver, of the rebate. The government's counsel also claims that the bribery statute makes agreeing to give or receive a bribe an offense, while the statutes prohibiting rebates does not, in terms, prohibit an agreement to give or

receive a rebate. But they do prohibit an offer of a rebate or the solicitation of a rebate, and when such an offer or solicitation is acceded to by the opposite party, which the indictment alleges occurred in this case, an agreement is entered into. In short, the Dietrich Case seems to me, in its essential nature, strictly analogous to this case. The facts alleged in the indictment in the case at bar as steps taken to effect the object of the conspiracy are the same facts which it would be necessary to prove to sustain an indictment for giving and receiving rebates. On the trial of such an indictment the government would not make out a cause by simply proving the payment of the check. It would have to prove that the check was given in payment of a rebate. To establish that proposition it would be necessary to prove the agreement to give a rebate, the shipment of sugars, the payment of the full scheduled rates of freight, the filing of the claims for rebate, and the payment of such claims as rebate. Without proof of these facts these defendants could not be convicted of the crime of giving or taking rebates; with such proof, they could. They would thereupon be liable to be punished by the fines prescribed by the Elkins act, and by no other punishment, and especially not by imprisonment, which penalty for such a crime is specifically abolished by the Elkins act. In my opinion, it is not in the power of the government, by calling the same acts a conspiracy, to indict these defendants for a different crime, and to thereby subject them to the liability of imprisonment for acts for which such punishment was expressly abolished by the Elkins act.

Since writing this opinion my attention has been called to an act to amend the act to regulate commerce and all acts amendatory thereof, which was approved on June 29, 1906, the day on which these demurrers were argued. That act amends section 1 of the Elkins act by striking out the provisions abolishing the punishment of imprisonment for offenses under the acts to regulate commerce, and inserting in lieu thereof a provision:

"That any person, or any officer or director of any corporation subject to the provisions of this act or the act to regulate commerce and the acts amendatory thereof, or any receiver, trustee, lessee, agent, or person acting for or employed by any such corporation, who shall be convicted as aforesaid, shall in addition to the fine herein provided for, be liable to imprisonment in the penitentiary for a term of not exceeding two years, or both such fine and imprisonment, in the discretion of the court."

This provision, upon general principles and by the express terms of the 10th section of the act, is not retrospective, and does not make any person liable to the punishment of imprisonment for such offenses committed before the passage of the recent act; but it authorizes the inference that in the opinion of Congress, without such an amendment, no punishment by imprisonment for such offenses could be imposed.

My conclusion is that the demurrers to the three indictments for giving or receiving rebates should be overruled, and the demurrer to the indictment for conspiracy should be sustained.