# THE UNITED STATES OF AMERICA *vs.* HOSHI, HISAKICHI YOKI, and HIKATARO KODAMA.

## November 17, 1909.

*Federal courts—Practice—Reversal of earlier decisions:* When one member of a Federal court has ruled upon a point of law after full consideration, his ruling should be allowed to stand until reversed by a higher court or until exceptionally strong occasion for reconsidering it has been adduced; otherwise the people and attorneys practicing before the bar would be in a continual state of uncertainty concerning the law.

*Criminal law—Conspiracy—Indictment when alleged offense is misdemeanor:* The fact that a conspiracy under section 5440 and the crime of adultery are both misdemeanors, would not *per se* prevent an indictment for an alleged conspiracy to commit the crime of adultery.

*Criminal law—Conspiracy—Indictment—Sufficiency of charge:* When it is charged in an indictment that certain persons conspired "to have the crime of adultery committed," this charge is substantially synonymous with the words "to commit the crime of adultery," provided that persons

of ordinary knowledge of the conditions alleged in the indictment, and especially provided that the defendants themselves, would be reasonably supposed to know the meaning of the charge.

*Same:*   When the words "did deliver" are used to indicate the alleged overt act of a conspiracy, whereby a woman, not charged as one of the conspirators, was said to have been delivered to one of the conspirators by the other two, as a definite act toward the commission of the adultery, and when the context shows clearly that it is charged that such delivery was a wrongful act intended to lead to an offense against the United States, the defendants are sufficiently informed concerning the overt act, in view of the fact that it is an indictment for conspiracy and in view of the express direction of Congress in R. S. 1025.

*Same:*   If it is a matter of knowledge to the court and of common knowledge in the community that in many instances Japanese women are in effect deliverable chattels in the hands either of their husbands, or of some other persons who completely control their actions, and particularly · if it is known to the court that Japanese residents within its jurisdiction are affected peculiarly with this common knowledge, a decision concerning alleged uncertainty of charges made in an indictment against such Japanese defendants might take that common knowledge into account to determine whether the alleged, or possible, uncertainty tends to the prejudice of the ·defendants.

*Criminal law—Conspiracy—Indictment:*   Even though the overt act should be in itself a crime against Federal or local law, the fact that the conspiracy necessarily involved the intention to perform such unlawful overt act, does not prevent an indictment for conspiracy when there is evidence of a conspiracy to commit, through said overt act, an offense against the United States; and this would be true even though subsequent to the overt act, through some unforeseen circumstance the offense aimed at by the conspiracy cannot be committed.

*Criminal Law*:   Demurrer to the indictment.

*Magoon & Weaver* and *W. C. Achi,* Attorneys for the Motion.

*W. T. Rawlins,* Ass't. U. S. District Attorney, Contra.

WOODRUFF, J.   These defendants were indicted on a charge of "conspiring   *   *   *   to have the crime of adultery committed" within the jurisdiction of this court.   Upon arraignment, counsel for Kodama demurred to the indictment, and later, counsel for Hoshi joined in the demurrer.   Yoki was not represented by counsel, but the court ruled that the decision on the demurrer would avail for or against Yoki's case also.

At first blush, the demurrer to the indictment in this case would seem to be identical in principle with the motion to quash in the case of *United States v. Kojima, et al.* (2 U. S. Dis. Ct. Haw. 12), and the court was inclined, since the Kojima case had not been shaken on appeal or otherwise, to overrule the demurrer forthwith. Argument by counsel for Kodama, however, showed conclusively that one reason which might avail, either in a motion to quash or on demurrer, had not been brought to the attention of the court in the Kojima case, and therefore, if the reason were sufficiently strong, it would be proper, upon a reconsideration of the principles laid down in that case, to reach a different conclusion. The hesitancy felt by me to give any consideration to the demurrer, except for new matter brought forward, was based, properly I believe, upon the propriety and necessity for repose whereby, when one member of the court has ruled upon a point of law after full consideration, his ruling should be allowed to stand until reversed by a higher court or until exceptionally strong occasion for reconsidering it has been adduced. Otherwise the people and the attorneys practicing before the bar would be in a continual state of uncertainty concerning the law.

The new argument brought forward is in effect as follows:

1.  Conspiracy under section 5440 of the Revised Statutes is a misdemeanor, not a felony (*Burkwitz v. United States,* 93 Fed. 452).

2.  The crime of adultery as fixed by the Federal statutes is also a misdemeanor, since Congress did not choose, in enacting this criminal statute, to make it a felony, and since the distinction between misdemeanors and felonies under the Federal criminal laws, in the absence of specific direction by Congress in any one of those laws, must be determined by the status of that crime under the common law.

3.  There are no such persons as accessories before the fact in connection with misdemeanors. In other words, all parties who for certain acts would be accessories to a felony would for the same class of acts be principals in the case of a misdemeanor (4 Blackstone, 36; 1 Russell on Crimes, 60, note 1).

4. Therefore, since the Kojima case was decided practically on the ground that the conspirators, by their conspiracy, made themselves accessories before the fact, and since Judge Dole did not have these points brought to his attention in that case, it would be proper upon this demurrer to reopen the whole case in order to give due consideration to these and allied arguments which can be produced.

I find it unnecessary at this time to decide whether or not the contention that there can be no accessories to a misdemeanor is correct. Granting for the sake of argument the apparent correctness of that contention, we find that in misdemeanors those who, because of certain acts would have been accessories if the crime were a felony, are as a matter of law principals. This technical distinction may be very interesting, but it does not lead to any conclusion unless, indeed, it were that there can be no conspiracy to commit an offense against the United States unless the offense is a felony. I would hesitate to go that length. Section 5440 says nothing whatever about accessories or principals, nor about misdemeanors and felonies. Congress saw fit to make it a crime "if two or more persons conspire * * * to commit any offense against the United States." We must presume that Congress meant something by the word "any," and the only reasonable construction to my mind is that it meant to include both felonies and misdemeanors. I have no doubt that Congress had power to make the conspiring together to commit a misdemeanor an offense against the United States. If this be true, the distinction between principals and accessories brought out by counsel ceases to have any weight when an indictment under section 5440 is under consideration. I therefore hold that the fact that a conspiracy under section 5440 and the crime of adultery are both misdemeanors, does not *per se* prevent an indictment for an alleged conspiracy to commit the crime of adultery.

The question being open, the court would not do its duty to the forceful argument of counsel for the defense if the above ruling should be taken as concluding the case. I will therefore

briefly touch upon the further arguments of counsel. It is true that in *Shannon & Nugent v. Commonwealth* (14 Pa. 226), the court scoffs at the idea of a conspiracy to commit adultery. It is also true that in the Pennsylvania case the indictment, in partial analogy to this case, charged "that other evil disposed persons whose names to the inquest are as yet unknown," besides the immediate principals Shannon and Edna Nugent, took part in the conspiracy. I am convinced, however, that the Pennsylvania court, in ridiculing the idea of conspiracy, took into account only the man and woman immediately involved, and, if the "other evil disposed persons" had been identified in the indictment and their overt act in the conspiracy indicated, the court might have decided differently, or at least might have found the indictment less ridiculous. Further, if the "other evil disposed persons" had been set forth in conjunction with either Shannon or Edna Nugent alone, thus leaving out of the charge of conspiracy one of the immediate principals, the action of the court might easily have been seriously affected and the decision, which under the circumstances was probably right, might have been different.

It would be absurd, as stated in the Nugent case, to charge a man and woman with a conspiracy to commit adultery with each other, but when we turn to the Kojima case we find that such a conspiracy can exist, whether or not it constitutes an offense known to the law; and coming down to this case we find ourselves in apparently a better position than in the Kojima case. Here we have the charge that three men conspired together to have the crime of adultery committed, one of these men to be a principal actor in the crime itself. It is not charged that the woman, the other principal, joined in the conspiracy. It is charged that the intent was unlawful, and that the overt act, namely, the delivery of the woman Kodama to one of the conspirators, Yoki, was "contrary to the form of the statute in such case made and provided"; in other words, was an offense against the United States.

It is true that the words "to have the crime of adultery com-

mitted," and the expression "did deliver" the woman to said Yoki, are somewhat subject to criticism for vagueness, in the light of that certainty which should be given to the particulars set forth in an indictment. It is necessary then to consider whether they are sufficiently uncertain to render the indictment liable to quashal.

Language is after all a clumsy vehicle for the transmission of thought. Although care should be used in the language employed in an indictment, here as everywhere else, since the indictment is prepared by sixteen or more ordinary citizens, we must expect to give to any language used its reasonable ordinary significance, unless there is strong reason for insisting upon its technical meaning. If the indictment had charged that the conspiracy was for the purpose of committing the crime of adultery, and if the conspiracy to commit a misdemeanor is a crime, the words would have been sufficient even in the light of counsel's contention that those who assist toward the commission of this crime are principals. In a charge of conspiracy, the certainty and particularity cannot, and is not required to, be as exact as in more specific crimes. The court holds therefore that the expression "to have the crime of adultery committed" is sufficiently synonymous with "to commit the crime of adultery," particularly when all the parties charged are of the same sex, so that the accused persons are sufficiently notified of the charge to protect their substantial rights. Therefore, under section 1025 R. S., quashal would be contrary to the express direction of Congress.

Turning to the other expression which is claimed to be fatally uncertain or ambiguous, namely, the words "did deliver," it is admitted that these words used alone would not be sufficient as to particularity, and would not charge sufficiently an overt act in the technical sense of that expression. Counsel argues continually that these words, and he must mean these words in their context, do not imply that the delivery was in some way or other a wrongful one; in fact he implies that the only meaning to be gathered from those words by defendants is "per-

mitted." This cannot be admitted. In fact it would take a great stretch of imagination to conceive how a delivery of any person or anything could result merely from permission. Suppose I have sold my dog to A, who whistles for the dog to follow him. You might say that I deliver the dog by indicating permission that he obey the call of his new master. The dog, however, probably looks upon the permission, signal or words, as an order to go, and even in such an extreme case the attempt at delivery by permission is in effect a delivery by authoritative order. It may be that the prosecution will find difficulty in proving that the three defendants actually conspired together and that two or one of them did commit the overt act of delivering the woman to the other for the unlawful purpose in the sinister meaning of deliver. That, however, is not the question before the court. The prosecution must attend to that upon the trial of the case. A demurrer or motion to quash cannot avail against an indictment, because the defendants do not believe that the prosecution can prove beyond a reasonable doubt the charges laid against them.

The words "did deliver" are to be read in conjunction with the whole indictment and the court holds that they in their context notify the defendants with sufficient certainty that they are charged with gaining and exercising such control over the woman that two of them were able, in the sinister meaning of the word, to "deliver" her to the third for the purpose indicated.

If the woman Kodama had been joined in the indictment as one of the conspirators and the charge had been that she was delivered to another of the conspirators, this decision might have been different. But since it is in no way shown or indicated, as assumed by counsel all through his argument, that the woman was, during the hatching of the conspiracy and before the performance of the overt act, a consenting or willing party to the proposed offense, the case seems to be distinguished from *Shannon & Nugent v. Commonwealth,* and to be, if anything, a stronger case than *United States v. Kojima, et al.*

Counsel contends that if any improper coercion was brought

to bear upon the woman in this case, then the charge of the indictment fails because the conspiracy must have been to do this wrongful thing or use the wrongful force. In other words, that a conspiracy to abduct, or seduce, or to do some other crime which might lead up to the adultery, would not and could not be a conspiracy to commit the crime as charged. In this line the courts have held that it is an offense against the United States "to conspire to commit any unlawful act which results in the obstruction of the mail, whether that result was intended or not" (*United States v. Stephens*, 2 Hask. 164; *In re Debbs*, 158 U. S. 564; *In re Lennon*, 166 U. S. 548; *United States v. Sweeny*, 95 Fed. 434). It follows that even though the the overt act itself may have been unlawful and indictable under either Federal or local law, the indictment may properly be for the ultimate offense intended to be committed, namely, the adultery, even though, for some conceivable reason such as the sudden death by heart disease of either of the immediate principals, the delivery itself was never committed. This leads to a consideration of the claim by counsel that there must be a *locus penitentiae,* namely, that in order to establish the condition of a conspiracy it must be that the parties could have repented before the commission of the overt act. In this case it is charged that there was a conspiracy to have the crime of adultery committed, and that the overt act was the delivery of the woman to one of the conspirators. Certainly up to and after such delivery the conspirators might have repented. Yoki might have refused to keep the appointment, and receive the woman when delivered; Kodama might have, before such actual delivery, repented and refused to carry out his supposed persuasive or coercive part in the scheme; Hoshi might have refused to take his cue or do the things which it was necessary for him to do in order that the delivery might take effect, or he might have warned the woman against the proposed action, or even notified the authorities.

I have not touched upon that which is a matter of judicial notice to this court at least, namely, that in many instances

Japanese women are in effect deliverable chattels in the hands either of their husbands or of some other persons who completely control their actions.   It is not necessary to go to the length of basing the sufficient particularity of the indictment upon this common knowledge of the community, and particularly as might be safely presumed of the defendants themselves; but if the meaning of the words alone had not been sufficiently. strong, it would have been proper to consider the effect of the common knowledge of this condition among some classes of the Japanese.

.The demurrer is overruled.