UNITED STATES of America,
Plaintiff-Appellee,

v.

Earl Christopher HUNTER et al.,
Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Hyland HILL, Defendant-Appellant.

Nos. 72–1700, 72–1701.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1973.

Decided April 11, 1973.

Rehearing Denied June 13, 1973.

**1020**

James W. Bradford, James Manahan, William J. Dougherty, Indianapolis, Ind., for defendants-appellants.

Stanley B. Miller, U. S. Atty., William F. Thompson, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

1. Other contentions relate to the refusal to declare a mistrial when 11 defendants changed their pleas, the number of peremptory challenges, the admissibility of the government's Exhibit 11, and the claimed variance under the reasoning of Kotteakos v. United States, 328 U.S. 750,

Before DUFFY, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Fourteen defendants were indicted as joint participants in an Indianapolis gambling operation. Count I charged a conspiracy to conduct an illegal gambling business in violation of 18 U.S.C. § 371; Count II charged that the same defendants engaged in the same illegal gambling business "in concert with each other" in violation of 18 U.S.C. § 1955. Shortly after the trial commenced, the charges against one defendant were dismissed and 11 defendants pleaded guilty. Appellants Hunter and Hill were tried and found guilty on both counts. Their appeals principally question: (1) the constitutionality of § 1955; (2) whether their gambling was "conducted by five or more persons" within the meaning of the statute; and (3) whether the two counts properly charged two different offenses.[1]

I.

There is no evidence that appellants' gambling activities had any effect whatsoever on interstate commerce. Accepting the government's interpretation of the facts, however, their business was large enough to satisfy the minima specified in 18 U.S.C. § 1955. That statute, enacted on October 15, 1970, as § 803(a) of the Organized Crime Control Act of 1970, provides, in material part:

"§ 1955. Prohibition of illegal gambling businesses

"(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

66 S.Ct. 1239, 90 L.Ed. 1557. As the discussion in the text, *infra*, indicates, the last contention is met by our acceptance of the government's view of the record as disclosing a single conspiracy. We find no merit in the other contentions.

"(b) As used in this section—

"(1) 'illegal gambling business' means a gambling business which—

"(i) is a violation of the law of a State or political subdivision in which it is conducted;

"(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

"(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." 84 Stat. 922, 937.[2]

The Organized Crime Control Act contains a statement of findings relating to the impact of organized crime on the nation's economy. See 84 Stat. 922–923. With respect to Title VIII dealing with syndicated gambling, Congress made a special finding "that illegal gambling involves widespread use of, and has an effect upon, interstate commerce and the facilities thereof." 84 Stat. 936. It is fair to interpret the legislation as a whole as reflecting a broad finding by Congress that the class of gambling enterprises described in § 1955 has a sufficient impact on the interstate economy to warrant prohibition by federal criminal legislation. As we interpret the holding in Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686, that finding, which we do not question, is sufficient to support the statute even when applied to individual members of the class whose own activities may not have any demonstrable impact on interstate commerce.[3]

United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488, and Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493, on which appellant Hunter relies, presented questions of statutory construction; in neither of those cases did the Court find a want of constitutional power to legislate. In short, we agree with the position uniformly adopted in other circuits on this constitutional issue. United States v. Becker, 461 F.2d 230, 233–234 (2d Cir. 1972); United States v. Harris, 460 F.2d 1041, 1043–1048 (5th Cir. 1972); United States v. Riehl, 460 F.2d 454, 458 (3rd Cir. 1972); Schneider v. United States, 459 F.2d 540 (8th Cir. 1972); United States v. Palmer, 465 F.2d 697 (6th Cir. 1972), cert. denied 409 U.S. 874, 93 S.Ct. 119, 34 L.Ed.2d 126.

## II.

The contention that appellants' gambling was not "conducted" by five or more persons raises a question of law and also a question of fact. They argue

---

2. As defined in the statute, " 'gambling' includes but is not limited to pool-selling, book-making, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein." In this case appellants concede that their activities constituted "gambling" as so defined, and that they were conducted in violation of the law of Indiana.

3. "As pointed out in United States v. Darby, 312 U.S. 100 [61 S.Ct. 451, 85 L.Ed. 609], the decision sustaining an Act of Congress which prohibited the employment of workers in the production of goods 'for interstate commerce' at other than prescribed wages and hours, a class of activities was held properly regulated by Congress without proof that the particular intrastate activity against which a sanction was laid had an effect on commerce.

\*　\*　\*　\*　\*

"Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class. Maryland v. Wirtz, 392 U.S. 183, 193 [88 S.Ct. 2017, 20 L.Ed.2d 1020].

"Extortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce. In an analogous situation, Mr. Justice Holmes, speaking for a unanimous Court, said: '[W]hen it is necessary in order to prevent an evil to make the law, embrace more than the precise thing to be prevented it may do so.' Westfall v. United States, 274 U.S. 256, 259 [47 S.Ct. 629, 71 L.Ed. 1036]." Perez v. United States, 402 U.S. 146, 152–154, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686.

that the statutory language requires five persons in a supervisory or ownership capacity, and therefore mere runners, telephone clerks, salesmen, and the watchman may not be counted as part of the required five persons. They also argue that each of them conducted a separate business which did not, in any event, employ as many as five persons. We reject both arguments.

Our study of the legislative history persuades us that the substitution of the words "five or more persons who conduct, finance, manage, supervise, direct, or own" for the language in Senate Bill 30 which had referred to five or more persons "who participate in the gambling activity" was merely designed to exclude customers of the illegal venture. As the House Committee Report stated, the term "conducts" is broad enough to include both "high level bosses and street level employees." In short, we again accept Judge Mansfield's analysis of the issue. See United States v. Becker, 461 F.2d 230, 232–233 (2d Cir. 1972).

■ Appellants' claim that the record discloses three separate businesses rather than one is by no means frivolous. Three different kinds of lottery tickets —"dailies," "moon and lightning tickets," and "bank slips"—each owned by a different "banker," were sold at the same place of business. Those premises were managed by two partners (Haering and Ferdinand) who employed about 12 persons in various capacities.[4] Haering and Ferdinand were the proprietors of the "dailies" business and received a commission of 25% on gross sales of "moon and lightning tickets" and 35% on sales of "bank slips" made from their premises. Appellant Hunter owned the "moon and lightning" business and appellant Hill owned the "bank slips." Hunter and Hill had no contact with one another, and each employed his own runners to make deliveries to, and pick-ups, from, the premises operated by Haering and Ferdinand.[5]

In familiar commercial terms, Haering and Ferdinand operated a retail outlet at which they sold their own product as well as the products of two other suppliers, Hunter and Hill. Although, as appellants plausibly argue, the three businesses are readily identifiable as separate commercial ventures, we are satisfied that the three entrepreneurs had a sufficient common interest in the development of sales, the maintenance of security, the efficient performance of services, and the solvency of all three ventures, to make it proper to regard them as a single criminal enterprise for purposes of the statutes here involved.[6] Since it is fair to charge each of the three principals with knowledge of the basic features of the total operation, it was proper to treat Hunter and Hill as participants in the same venture even though they had no direct contact with one another.

We therefore conclude that all of the defendants participated in the same conspiracy charged in Count I of the indictment and in the same "illegal gambling business" charged in Count II. The question which remains is whether there was any material difference between that conspiracy and that illegal business.

### III.

■ Two offenses may be separately prosecuted and punished if each requires

---

4. Finney, Newport, Peterson, Phelps and Willey sold bank slips; Porter, Warren and Board sold all three types of tickets. Blaine and Stewart were stationed at telephones to inform customers of winning numbers; Anderson guarded the door and Taylor was the night watchman.

5. Kelly and Hanna served as intermediaries between Hunter, Haering and Ferdinand; Jackson was the runner for Hill.

Hunter had never even visited Haering's premises; Hill had apparently been seen there on only one occasion.

6. Without burdening the opinion with financial detail, our study of government Exhibit 16 persuades us that none of the three businesses, if operated independently, would have supported the total operation described by the evidence.

proof of an element which the other does not.[7] The *Blockburger* test, though easily stated, is sometimes difficult to apply. Thus, on facts comparable to those before us, the Second Circuit held that seven participants in an illegal gambling venture may be prosecuted both for conspiracy to violate § 1955 and for the violation of § 1955 itself, United States v. Becker, 461 F.2d 230, 234 (1972); whereas two district courts, relying on Wharton's Rule, have reached a contrary result in cases involving thirteen and eight defendants, respectively, United States v. Greenberg, 334 F.Supp. 1092 (N.D.Ohio 1971); United States v. Fi-gueredo, 350 F.Supp. 1031 (M.D.Fla. 1972).

■ If a substantive offense may be committed by a single individual, a conspiracy to commit that offense, unlike an attempt, does not merge with the completed offense. This rule, which stems from the common law distinction between felonies and misdemeanors,[8] is supported by the notion that conspiracy is an especially grave offense [9] and is consistent with the constitutional objection to double jeopardy.[10]

■ The rule is different, however, if the substantive offense requires the con-

7. "Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. Gavieres v. United States, 220 U.S. 338, 342 [31 S.Ct. 421, 55 L.Ed. 489], and authorities cited" Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 520.

8. "Under the early common law, a conspiracy—which constituted a misdemeanor—was said to merge with the completed felony which was its object. See Commonwealth v. Kingsbury, 5 Mass. 106. This rule, however, was based upon significant procedural distinctions between misdemeanors and felonies. The defendant in a misdemeanor trial was entitled to counsel and a copy of the indictment; these advantages were unavailable on trial for a felony. King v. Westbeer, 1 Leach 12, 15, 168 Eng.Rep. 108, 110 (1739); see Clark and Marshall, Crimes, § 2.03, n. 96 (6th ed.). Therefore no conviction was permitted of a constituent misdemeanor upon an indictment for the felony. When the substantive crime was also a misdemeanor, People v. Mather, 4 Wend. 229, 265 (N.Y.), or when the conspiracy was defined by statute as a felony, State v. Mayberry, 48 Me. 218, 238, merger did not obtain. As these common-law procedure niceties disappeared, the merger concept lost significance, and today it has been abandoned. Queen v. Button, 11 Q. B. 929, 116 Eng.Rep. 720; Pinkerton v. United States, 328 U.S. 640 [66 S.Ct. 1180, 90 L.Ed. 1489]." Callanan v. United States, 364 U.S. 587, 589–590, 81 S.Ct. 321, 323, 5 L.Ed.2d 312.

The offense charged in each count in this indictment is a felony punishable by imprisonment of not more than five years.

9. "We cannot agree that there is anything unreasonable, or inconsistent with the general policy of the Bankruptcy Act, in allowing a longer period for the prosecution of a conspiracy to violate one of its penal clauses than for the violation itself. For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws, is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy, rendering it difficult of detection, requiring more time for its discovery, and adding to the importance of punishing it when discovered." United States v. Rabinowich, 238 U.S. 78, 88, 35 S.Ct. 682, 685, 59 L.Ed. 1211.
See also Dennis v. United States, 341 U.S. 494, 573–574, 71 S.Ct. 857, 95 L.Ed. 1137 (Mr. Justice Jackson concurring)

10. Since the agreement between the conspirators is an ingredient "distinct from the completion of the unlawful project" itself, see Pinkerton v. United States, 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489, and since the crime of conspiracy may be completed even though the project is unsuccessful, the *Blockburger* test is satisfied. This is not true, however, "where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime." Id. at 643, 66 S.Ct. at 1182.

certed action of two wrongdoers and they are indicted for both conspiracy and the completed crime.[11] Neither history, policy, nor the *Blockburger* formula justifies two punishments of persons who both agree to engage, and do in fact engage, in acts such as adultery,[12] bribery,[13] or a prohibited rebate transaction.[14] In such cases a two-person conspiracy to commit a two-person crime is like an individual attempt to commit an individual offense.

It has been said, however, that the conspiracy to commit adultery is a separate offense when a third person participates in the arrangement;[15] obviously, such a third party is a conspirator though not guilty of the substantive offense. The status of the two principal offenders is less clear; if their agreement encompassed only a single transaction, it is difficult to see why the involvement of the matchmaker should affect their own culpability. In any event, as we read the cases presenting the question whether the participants in a consummated multi-person offense may be charged with conspiracy, they do not

11. "It is the general rule that a conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy. * * *
"There is excluded from the rule conspiracies to commit crimes which in their very nature require concerted action of all the participants. In such cases, the result has such a close connection with the objective offense as to be inseparable from it. United States v. Katz, 271 U.S. 354, 355, 46 S.Ct. 513, 70 L.Ed. 986; Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67." Freeman v. United States, 146 F. 2d 978, 979 (6th Cir. 1945).

12. "In each of the cases of Shannon v. Commonwealth, 14 Pa. 226, and in Miles v. State, 58 Ala. 390, a man and woman were indicted for a conspiracy to commit adultery with each other. It was held in each case that the conspiracy was the same thing as the substantive offense, and the indictments were quashed. Wharton, in commenting on these cases, says:
" 'When the law says a combination between two persons to affect a particular end shall be called, if the end be effected by a certain name, it is not lawful for the prosecution to call it by some other name; and when the law says such an offense—e. g., adultery— shall have a certain punishment, it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy. Of course, when the offense is not consummated, and the conspiracy is one which by evil means a combination of persons is employed to effectuate, this combination is of itself indictable, and hence persons combining to induce others to commit bigamy, adultery, incest, or duelling do not fall within this exception, and may be indicted for conspiracy.' Wharton's Crim.Law, § 1339."

United States v. New York Central & H. R. R. Co., 146 F. 298, 303 (C.C.N.Y. 1906).

13. "The agreement or transaction stated in this indictment was immediately and only between two persons, one charged with the intended taking and the other with the intended giving of the same bribe. Concert and plurality of agents in such an agreement or transaction are, in a sense, indispensable elements of the substantive offenses, defined in section 1781, of agreeing to receive a bribe and of agreeing to give one. A person cannot agree with himself, receive from himself, or give to himself. The concurrent and several acts of two persons are necessary to the act of agreeing, receiving, or giving. In this respect, agreeing to receive a bribe from another and agreeing to give one are unlike soliciting or offering a bribe, because the solicitation or offer may be the act of a single person and may occur without any concurrent act of another.
 * * * * *
"Because concert and plurality of agents, in the sense we have hereinbefore shown, are essential to each of the offenses— there are two, not one—the commission of which is charged to have been the object of this so-called conspiracy, and because no other concert and plurality of agents are here charged, we are of opinion that the acts described in this indictment do not constitute a conspiracy under section 5440." United States v. Dietrich, 126 F. 664, 667–668 (C.C.Neb.1904).

14. United States v. New York Central & H. R. R. Co., 146 F. 298 (C.C.N.Y.1906).

15. See Judge Krentzman's discussion of the "third person" exception to Wharton's Rule in United States v. Figueredo, 350 F.Supp. 1031, 1035 (M.D.Fla.1972).

turn on the number of participants in the conspiracy, but rather on whether or not the conspiracy charged depends on proof of an element which is not a part of the substantive offense.

State v. Clemenson, 123 Iowa 524, 99 N.W. 139 (1904), which is sometimes cited as an example of the "third person" exception to Wharton's Rule, actually sustained a conspiracy charge against an adulterer because the consent of his partner was not an element of the substantive offense in Iowa.[16] The Iowa court explained a different result reached in Pennsylvania and Alabama by the fact that the woman's consent was an element of the substantive offense in those states.[17]

The conspiracy allegations in United States v. New York Central & H. R. R. Co., 146 F. 298 (C.C.N.Y.1906) and United States v. Sager, 49 F.2d 725 (2d Cir. 1931), described agreements by more than two persons to commit substantive offenses which could be committed by only two. Those cases are thus analogous to a charge of conspiracy by more than five persons to violate 18 U. S.C. § 1955. In *Sager,* the conspiracy count alleged "concert between several intended givers of a bribe and the intended taker of the same bribe," 49 F.2d at 727; in the *New York Central* case, the indictment charged "that seven persons named and others to the jurors unknown were parties to the conspiracy," 146 F. at 304. Both multi-person situations fell within Judge Learned Hand's statement that "when the crime, which is the object of the putative conspiracy, requires for its commission some reciprocal action of the conspirators indicted, they may not be indicted for conspiring to commit it if they have in fact consummated it. This is because the crime

presupposed their mutual agreement which was therefore a part of it" United States v. Center Veal & Beef Co., 162 F.2d 766, 770 (2d Cir. 1947).

In his earlier opinion in United States v. Zeuli, 137 F.2d 845, 846 (2d Cir. 1943), Judge Hand had summarized the rule as follows:

"Lower Federal courts have several times decided that, if a crime necessarily involves the mutual cooperation of two persons, and if they have in fact committed the crime, they may not be convicted of a conspiracy to commit it. United States v. Dietrich, C.C.Neb., 126 F. 664 (Van Devanter and Munger, JJ.); United States v. New York Central & H. R. R. Co., 146 F. 298 (Holt, D. J.); United States v. Sager, 2 Cir., 49 F.2d 725, 727, 728. Although the Supreme Court has never actually so decided, it has twice clearly approved the doctrine; and we accept it as settled law. United States v. Katz, 271 U.S. 354, 355, 46 S.Ct. 513, 70 L.Ed. 986; Gebardi v. United States, 287 U.S. 112, 122, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370. Therefore, if the conspiracy was confined to the transaction between Zeuli and Steneck by which the stolen books were sold, although both were guilty of the substantive crime, neither was guilty of conspiracy. The indictment was not so confined; it laid a single conspiracy which comprehended not only the disposal of the books but the original theft of them. Such a conspiracy was not within the doctrine we have just mentioned, for it covered more than the crime of receiving."

In the case before us, both alleged offenses require "the mutual coop-

16. "Nor is the consent of the female essential to constitute the crime. . . . As adultery is a felony, then, and may be committed without the consent of the female, . . . there is no ground for saying that the offense may not be the subject of conspiracy." 99 N.W. 139.

17. "This case is readily distinguishable from Shannon v. Com., 14 Pa. 226, and Miles v. State, 58 Ala. 390. In those decisions the agreement of a married woman to have intercourse with a man other than her husband was held not to amount to a conspiracy to commit adultery, for that the consent involved was a part of the offense itself." *Ibid.*

eration" or the "reciprocal action" of a plurality of persons. The conspiracy charged in Count I is confined to the transactions described in Count II as a violation of § 1955; the conspiracy covers nothing more than the substantive crime committed by the conspirators. There is no suggestion that the proof of intent required for the violation of § 1955 is any different from the evidence required to sustain the charge of conspiracy.[18]

It is true, as the government argues, that the conspiracy charge encompasses more than five persons, the number *required* for a violation of § 1955. It is also true, and equally significant, that the substantive charge encompasses more than two persons, the number *required* for a violation of § 371.[19] But an argument which merely emphasizes the number of persons charged in the indictment does not identify an element of each offense which adequately differentiates the other. Two or more may be guilty of conspiracy; five or more may be guilty of either conspiracy or the substantive crime. But even though five or more persons are named in the indictment, a charge of conspiracy to violate § 1955 may not be maintained if it comprehends nothing more than the agreement which those persons necessarily performed by the commission of the substantive offense itself. We think this conclusion is a fair interpretation of congressional intent,[20] is supported by the considerations which normally require that an attempt merge with a completed offense, and is consistent with the general rule that conspiracy is a crime separate from the individual substantive offense or offenses which the conspirators intended. We find "no ingredient in the conspiracy [charged in Count I]

which is not present in the completed crime [charged in Count II]." Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489.

The judgment of conviction in Count I is reversed. In all other respects the judgments are affirmed.

---

18. Cf. United States v. Nasser, 476 F.2d 1111 (7th Cir. 1973); dissenting opinion page 1125.

19. One of the elements of the offense defined in 18 U.S.C. § 371 is that "two or more persons conspire. . . ." The comparable language in the § 1955 defini-

tion of an illegal gambling business is that it involve "five or more persons."

20. See United States v. Figueredo, 350 F. Supp. 1031, 1036 (M.D.Fla.1972); cf. United States v. Nasser, 476 F.2d 1111 at page 1120–1121 (7th Cir. 1973); Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206.