**UNITED STATES of America**

**v.**

**Michael A. RIEHL et al., Appellants.**

**Appeal of Arthur J. RINALDI.**

**Appeal of James L. CHICK.**

**Nos. 71-2133 to 71-2135.**

United States Court of Appeals, Third Circuit.

Argued April 6, 1972.

Decided May 9, 1972.

Irving M. Green, New Kensington, Pa., for appellants Riehl and Rinaldi.

James E. McLaughlin, Pittsburgh, Pa., for appellant Chick.

Kenneth A. Bravo, John Elias, U. S. Dept. of Justice, Pittsburgh, Pa., for appellee.

Before ADAMS and GIBBONS, Circuit Judges and BECKER, District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This appeal brings before us for the first time the provisions of Title VIII of the Organized Crime Control Act of 1970. 18 U.S.C. §§ 1511, 1955 (1971); Act of October 15, 1970, Pub.L. No. 91–425, Tit. VIII, §§ 802(a), 803(a). 84 Stat. 936–40. Section 1511 prohibits conspiracies to facilitate an illegal gam-

bling business by means of the obstruction of the enforcement of local laws.[1]

Section 1955 prohibits the conducting of an illegal gambling business.[2] Appel-

1. "§ 1511. Obstruction of State or local law enforcement

(a) It shall be unlawful for two or more persons to conspire to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal business if—

(1) one or more of such persons does any act to effect the object of such a conspiracy;

(2) one or more of such persons is an official or employee, elected, appointed, or otherwise, of such State or political subdivision; and

(3) one or more of such persons conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business.

(b) As used in this section—

(1) 'illegal gambling business' means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels, or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) This section shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization, except as compensation for actual expenses incurred by him in the conduct of such activity.

(d) Whoever violates this action shall be punished by a fine of not more than $20,000 or imprisonment for not more than five years, or both."

2. "§ 1955. Prohibition of illegal gambling businesses

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years or both.

(b) As used in this section—

(1) 'illegal gambling business' means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business, and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) 'gambling' includes but is not limited to poolselling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the pro-

lants Riehl, Rinaldi and Chick were charged in Count One of the Indictment with violating § 1955 by operating an illegal intrastate gambling business in the City of Jeannette, Pennsylvania. A second count charged that Riehl, Rinaldi and Chick conspired in violation of § 1511 to obstruct the enforcement of the Pennsylvania anti-gambling laws with intent to facilitate the operation of an illegal gambling business in Jeannette conducted by James L. Chick. A third count charged that Riehl and Rinaldi conspired in violation of § 1511 to obstruct the enforcement of the Pennsylvania anti-gambling laws to facilitate the operation of an illegal gambling business in Jeannette conducted by Albert J. Abraham, an unindicted co-conspirator. In a jury trial all were convicted, Riehl and Rinaldi on all three counts and Chick on the first two. Each received a custodial sentence. On appeal all make these contentions:

(1) That Title VIII is not an exercise of congressional power authorized by the commerce clause and is hence unconstitutional.

(2) That Title VIII is an unduly vague criminal statute, and hence is void.

(3) That properly construed Title VIII did not reach the two small local gambling operations here involved because the number of persons established as having been involved in each of these operations was less than the number requisite for the application of §§ 1511 and 1955.

(4) That the Government made improper use, on the conspiracy counts, of the testimony of an informer.

To put these contentions in context one must start with the definition of an "illegal gambling business" which is found in identical terms both in § 1511 and § 1955:

"(1) 'illegal gambling business' means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." 18 U.S.C. §§ 1511(b) and 1955(b).

If the gambling enterprise in question meets all three prerequisites, anyone who "conducts, finances, manages, supervises, directs, or owns all or part" of it commits a substantive violation of § 1955. If the enterprise meets all three prerequisites, conspiracies to obstruct local law enforcement with the intent to facilitate its operation violate § 1511 if:

"(2) one or more of such persons is an official or employee, elected, appointed, or otherwise, of such State or political subdivision; and

(3) one or more of such persons conducts, finances, manages, supervises,

visions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

(e) This section shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity."

directs, or owns all or part of an illegal gambling business."

### The Commerce Clause Contention

 Appellants contend that Congress lacked any rational basis for a finding that the intrastate illegal gambling businesses defined in §§ 1511 and 1955 have any effects upon interstate commerce. They urge that by purporting to provide a federal criminal penalty for an entirely local activity, Congress has exceeded the bounds implicit in Article I, § 8, and made explicit by the Tenth Amendment. We do not agree.[3]

In Part A of Title VIII Congress made Special Findings:

"Sec. 801. The Congress finds that illegal gambling involves widespread use of, and has an effect upon, interstate commerce and the facilities thereof."

The House Report on the Organized Crime Control Act of 1970 states:

"The intent of section 1511 and section 1955, below, is not to bring all illegal gambling activity within the control of the Federal Government, but to deal only with illegal gambling activities of major proportions. It is anticipated that cases in which their standards can be met will ordinarily involve business-type gambling operations of considerably greater magnitude than simply meet the minimum definitions. The provisions of this title do not apply to gambling that is sporadic or of insignificant monetary proportions. It is intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern, and those corrupt State and local officials who make it possible for them to function." H.R.Rep.No.91–1549, 91st Cong.2d Sess. (1970); 2 U.S.Code Cong. & Admin.News 1970 at p. 4029 (hereinafter *House Report*).

Congress reached the conclusion that illegal gambling involves the use of and has an effect upon interstate commerce as a result of various hearings on proposed legislation which ultimately became Title VIII.[4] Illegal gambling has been found by Congress to be in the class of activities which exerts an effect upon interstate commerce. Where the class of activities is regulated and that class is within the reach of federal power, the courts may not excise as trivial individual instances of the class. Perez v. United States, 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Katzenbach v. McClung, 379 U.S. 294, 85 S. Ct. 377, 13 L.Ed.2d 290 (1964); Heart of Atlanta Motel v. United States, 379 U.S. 241, 258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); Wickard v. Filburn, 317 U. S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). Congress has chosen to protect commerce and the instrumentalities of commerce not from all illegal gambling activities but from those it deems of major proportions. We may not substitute our judgment as to where the line might have been drawn. Nor may we sit in judicial review of congressional legislative findings.

---

3. Nor do those district courts which have passed upon the issue. *See* United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa., filed Feb. 16, 1972); United States v. Sacco, 337 F.Supp. 521 (N.D.Cal.1972); United States v. Aquino, 336 F.Supp. 737 (E.D.Mich.1972); United States v. Harris, 332 F.Supp. 315 (N.D.Tex.1971).

4. Hearings before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess. 88–89 (1970) [hereinafter referred to as House Hearings];

Hearings Before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 91st Cong., 1st Sess. 382–88 (1969); Hearings Before the Permanent Subcommittee on Investigations of the Committee on Senate Government Operations, 87th Congress, 1st Session (August 22–25, 28–31, 1961); Hearings before Subcommittee No. 5 of the House Committee on the Judiciary, 87th Congress, 1st Session, 18–26 (May 17, 1961); 116 Cong.Rec. 604 (1970) (Remarks of Senator Allott).

## Vagueness

Appellants contend that the definition of an "illegal gambling business" in §§ 1511 and 1955 is unconstitutionally vague. They urge that the word "conduct," in the clause "(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business" introduces an element of impermissible ambiguity.

As originally drafted Title VIII of Senate Bill 30 which became the Organized Crime Control Act of 1970 defined an illegal gambling business as one which "involves five or more persons who *participate* in the gambling activity." (emphasis added) This language was criticized because it might include mere bettors. *See, e. g.*, the report of the Association of the Bar of the City of New York, reprinted in *House Hearings* at 325, and testimony in *House Hearings* at 191, 367. The House Amendment, which became law, substituted "conduct, finance, manage, supervise, direct or own" for "participate". The House Judiciary Committee Report explains:

> "The term 'conducts' refers both to high level bosses and street level employees. It does not include the player in an illegal game of chance, nor the person who participates in an illegal gambling activity by placing a bet." House Report at 53, 2 U.S.Code Cong. & Admin.News 1970 at p. 4029.

The meaning seems perfectly clear to us. A street runner for a numbers business "conducts" that business in the sense that he carries it on. Indeed without him it could not be carried on. Before the gambling enterprise may be deemed of sufficient magnitude to warrant federal proscription it must be carried on by at least five people, including its street level employees, its managers and its owners. Its customers are excluded from the numerical count. All other participants are included. The statute is not vague.

## Statutory Construction

Appellants contend that, assuming the statute is constitutional, properly construed it did not apply to their small local operations. This contention requires an exposition of the facts.

The government's chief witness, Albert J. Abraham, was an admitted gambler, and an informer. His testimony discloses that prior to January, 1970 he conducted a numbers operation in Jeannette which employed more than five runners and that the same operation continued thereafter.

Beginning in January Rinaldi, the Chief of Police, began to harass his operation in an effort to compel him to turn his numbers in to defendant Chick. Riehl, the Mayor, spoke to him about requiring all local numbers business to be turned in to Chick. Abraham yielded to this pressure and thereafter did business with Chick, and continued to do so until April 23, 1971. He also became an informer for a state law enforcement agency, and began surreptitiously to record conversations with the defendants. These recorded conversations corroborate his testimony that Riehl, Rinaldi and Chick were conspiring to facilitate Chick's gambling enterprise.

The foregoing evidence establishes all the elements necessary for conviction of the charge alleged in the second count of the Indictment. That count charges a conspiracy to obstruct the enforcement of the criminal laws of Pennsylvania with the intent to facilitate Chick's illegal gambling enterprise. Chick, Abraham, and Abraham's five runners supplied the necessary persons. 18 U.S.C. § 1511(b) (1) (ii). The operation continued for more than thirty days. 18 U.S.C. § 1511(b) (1) (iii). Two conspirators (Riehl and Rinaldi) were officials or employees of a political subdivision. 18 U.S.C. § 1511(a) (2). One conspirator (Chick) conducted, financed, managed, supervised, directed or owned the illegal gambling business. 18 U.S.C. § 1511(a) (3).

It is clear, as well, that the foregoing evidence proved a violation by Chick of § 1955, as charged in the first count of the Indictment.

■ Riehl and Rinaldi were also charged in and convicted on the first count. Their conviction of the substantive violation of § 1955, as distinguished from the § 1511 conspiracy, can stand only if there is evidence that they, as well as Chick, conducted, financed, managed, supervised, directed, or owned the enterprise. Title VIII differentiates between facilitating an illegal gambling business and carrying on such a business. It seems clear that one may conspire to facilitate such a business and thereby violate § 1511, and at the same time be so removed from its operation so as to fall outside the reach of § 1955.

■ On the entire record, however, we conclude that there was sufficient evidence to sustain the § 1955 conviction of Riehl and Rinaldi. This is not a case where corrupt public officials merely extorted tribute in exchange for the privilege of conducting an illegal gambling business. Abraham's testimony establishes that Riehl and Rinaldi went much further, awarding to Chick a monopoly in the numbers business in Jeannette and enforcing that monopoly by harassing would-be competitors. Thereby they become quite direct participants, and consequently they were clearly managing, supervising and directing the enterprise.

■ The third count presents a more difficult problem. It alleges a § 1511 conspiracy to obstruct the criminal laws of Pennsylvania with intent to facilitate an illegal gambling business conducted by Abraham. Chick is not named. The evidence on the third count is that in addition to the numbers business Abraham engaged in the sale of punchboards. These are little betting devices on which for the payment of five cents, ten cents, or a quarter the bettor punches out a piece of paper which may entitle him to anywhere from fifty cents to twenty-five dollars. Rinaldi insisted that he be paid twenty-five dollars per gross for

each gross of punchboards sold in Jeannette and insisted, further, that the punchboards be bought from a single local distributor. There is evidence of a conspiracy to obstruct the Pennsylvania criminal law. 18 U.S.C. § 1511(b) (1) (i). Riehl and Rinaldi are public officials or employees. 18 U.S.C. § 1511(a) (2). Abraham, if he can be counted as a conspirator, was conducting an illegal gambling business. 18 U.S.C. § 1511(a) (3). But there is no proof in the record of the requisite number of persons conducting that business. The favored distributor did not work for Abraham. There is no evidence that Abraham's numbers runners distributed punchboards. There is evidence that he resold the punchboards to certain customers who apparently operated for their own account. There is no evidence of the number of such customers. Even if Chief Rinaldi and Mayor Riehl were considered to be carrying on the business of the favored distributor there still would not be evidence that five persons conducted, financed, managed, supervised, directed or owned that business. Moreover the conspiracy charged in Count Three was directed at facilitating the business managed by Abraham. The evidence simply does not establish that five persons were involved in that business, even counting Riehl and Rinaldi. Thus the conviction of Riehl and Rinaldi on the third count may not stand.

### Use of Abraham's Testimony

■■ The appellants, citing United States v. Williamson, 450 F.2d 585 (5th Cir. 1971), contend that Abraham could not properly be treated, for purposes of the co-conspirator admissions rule, or for purposes of § 1511(a) (3), as a co-conspirator, since he was in fact a government informer. At no place in the record was any use made of any out-of-court statement by Abraham for the truth of the matter asserted. Thus no co-conspirator admissions issue is presented. The contention that he could not be counted as the necessary gambler-conspirator for purposes of §

1511(a) (3) is not relevant to the second count. Chick was the gambler-conspirator for that count. Since we have held that the evidence on the third count was in other respects insufficient we need not decide whether or not a government informer may be a conspirator for purposes of § 1511(a) (3). Since there was evidence that even excluding Abraham there were more than five persons conducting, financing, managing, supervising or directing Chick's enterprise no issue is presented as to whether a government informer can be counted among the necessary five for purposes of 18 U.S.C. § 1511(b) (1) (ii) and § 1955(b) (1) (ii).

Each appellant's sentence was imposed only on the conviction on the first count. Imposition of sentence on the second and third counts was suspended. Thus the reversal of the convictions of Riehl and Rinaldi on the third count does not affect the sentences.

The judgments of conviction and sentence on the first count will be affirmed. The judgments of conviction on the second count will be affirmed. The judgments of conviction on the third count will be reversed.