496 F.2d 1278
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Waring MARRIFIELD, John Hobart McEarchern, Roy Wayne
Nelson, Sam LeePresley, Joseph Paul Poulos, Jr.,
and Albert Lowry Slaughter, Defendants-Appellants.
 No. 73-3464 Summary Calendar.*
*Rule 18, 5th Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of N.Y. et al., (5th Cir. 1970), 431
 
 F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 July 12, 1974.
 Thomas M. Haas, Mobile, Ala. (Court-appointed), for Marrifield, McEarchern, Poulso, and Slaughter.
 Charles S. White-Spunner, U.S. Atty., Mobile, Ala., for plaintiff-appellee.
 Before GEWIN, GODBOLD and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 Defendants were jointly indicted for unlawfully conducting a gambling business in a mobile home-casino located in a remote section of Baldwin County, Alabama near the Florida border. In a single proceeding, the six persons indicted as confederates were convicted upon pleas of not guilty before a jury and assessed various terms of imprisonment for violation of 18 U.S.C.A. 1955 (Supp.1974). Because we have concluded that their consolidated specifications of error in the proceedings below are devoid of merit, we affirm.
 
 
 2
 In passing Section 1955 into law as part of Title VIII of the Organized Crime Control Act of 1970, Pub.L. 91-452, 84 Stat. 922, Congress sought to employ its commerce clause powers to foreclose a major source of power and revenue to organized crime by proscribing any gambling business, which
 
 
 3
 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 
 
 4
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 
 
 5
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 
 
 6
 18 U.S.C.A. 1955(b)(1) (Supp.1974).
 
 
 7
 It is now well settled, either explicitly or implicitly, in this and at least seven other circuits that Section 1955 passes constitutional muster as a valid exercise by Congress of its legislative powers under the commerce clause. United States v. Pacheco, 489 F.2d 554 (5th Cir. 974); see, e.g., United States v. Smaldone, 485 F.2d 1333, 1342 & cases cited (10th Cir. 1973); United States v. Bobo, 477 F.2d 974 (4th Cir. 1973); United States v. Palmer, 465 F.2d 697 (6th Cir. 1972), cert. denied, 409 U.S. 874, 93 S.Ct. 119, 34 L.Ed.2d 126 (1973); see also Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). Furthermore, it is also clear that 'convictions under 1955 do not require a showing in each individual case that the gambling activities of a particular defendant have affected commerce . . ..' Schneider v. United States, 459 F.2d 540, 541 (8th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972), quoted in United States v. Meese, 479 F.2d 41 (8th Cir. 1973); see United States v. Hunter, 478 F.2d 1019 (7th Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973).
 
 
 8
 In addition to asserted infirmities in the indictment and the trial court's charge to the jury, defendants spin off various challenges to the trial proceedings from their central contention that the nature of their felonious enterprise fails to satisfy the federal statute's jurisdictional prerequisite of criminal involvement by five or more individuals. Although the proof adduced at trial showed that the individual defendants freely interchanged their roles, it was established that the gambling operation generally consisted of a banker, who handled the poker chips and money at the green, felt-covered gaming table, a stickman, who wielded an L-shaped instrument to clear the table of dice and poker chips, a blackjack dealer and a manager. Despite the fact that over a seven month period FBI agents and other witnesses had observed each of the six defendants to be engaged in the illicit business on various occasions, the record did not demonstrate that at any time there were more than four of the collaborators actually present and working in the establishment.[1] From this factual foundation defendants advance the proposition that their gambling venture lies outside the ambit of 18 U.S.C. 1955(b)(1)(ii).
 
 
 9
 Defendants argue that (1) the prosecution failed to establish that their enterprise was an illegal gambling business within the purview of Section 1955, (2) the district court improperly denied their consolidated motions to suppress physical evidence seized during an FBI raid of the establishment because the affidavit supporting the search warrant did not allege sufficient facts or demonstrate probable cause to establish a violation of the Act, (3) their motions for judgments of acquittal were erroneously overruled since the evidence was insufficient as a matter of law to support their convictions, and (4) the trial judge improperly instructed the jury that Section 1955 prohibited a gambling business of a size which reasonably required or involved the active participation of five or more persons.
 
 
 10
 Because the degree of participation intended to be proscribed as criminal by Section 1955 is nowhere therein defined, courts considering this issue have looked for guidance to the legislative history behind a parallel, simultaneously enacted provision of the Organized Crime Control Act, 18 U.S.C. 1511, which describes an 'illegal gambling business' in identical terms. These two statutes have been construed to be in pari materia. See, e.g., United States v. Becker, 461 F.2d 230 (2d Cir. 1972); United States v. Harris, 460 F.2d 1041 (5th Cir. 1972), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1973); United States v. Riehl, 460 F.2d 454 (3d Cir. 1972).
 
 
 11
 (Section 1511) applies generally to persons who participate in the ownership, management, or conduct of an illegal gambling business. The term 'conducts' refers both to high level bosses and street level employees. It does not include the player in an illegal game of chance, nor the person who participates in an illegal gambling activity by placing a bet.
 
 
 12
 H.R.Rep.No.91-1549, 91st Cong., 2d Sess. (1970), 1970 U.S.Code Cong. & Admin.News p. 4029.[2] As the Second Circuit has declared,
 
 
 13
 thus Congress' intent was to include all those who participate in the operation of a gambling business, regardless how minor their roles and whether or not they be labelled agents, runners, independent contractors or the like, and to exclude only customers of the business.
 
 
 14
 United States v. Becker, supra, 461 F.2d at 232. The strained statutory construction urged by the defendants runs counter to the stated legislative purpose and would effectively emasculate the Act. The fact that only four of these defendants were engaged at any particular time in running a business which contemplated and required the active participation of six persons is clearly of no decisional significance here.[3] On this record, therefore, the jury's verdict that each defendant was guilty of conduct condemned as criminal by the plain words of Section 1955 was entirely proper. Likewise impervious to appellate attack are the trial judge's charge to the jury[4] and his actions in denying defendants' motions to suppress and for judgments of acquittal. United States v. Bobo, supra; United States v. Harris, supra.
 
 18 U.S.C.A. 1955(c) (Supp.1974) provides:
 
 15
 If five or more persons conduct, finance, manage, supervise, direct or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.
 
 
 16
 The presumption raised by this subsection does not overstep constitutional boundaries, see United States v. Fino, 478 F.2d 35 (2d Cir. 1973); United States v. Palmer, supra, and the affidavit supporting the search warrant amply demonstrated probable cause to believe the defendants' gambling enterprise violated Section 1955 without resort to the statutory presumption. The record discloses ample proof to support each of these convictions.
 
 
 17
 Defendants finally contend that contrary to the ruling below, the indictment[5] should not have withstood their motions to dismiss. They assert that the general allegation of a violation of the Alabama Criminal Code, which is an essential element of the federal charge,[6] did not sufficiently inform them of the specific charges they were called upon to defend. Certainly, the grand jury's crimination that the defendants 'did knowingly and wilfully conduct . . . an illegal gambling business, to wit, a business for placing bets on dice and cards' not only set forth a violation of Alabama law but was adequate to place them on notice of the accusations they confronted. Further factual allegations were unnecessary to make out an offense against the State of Alabama. The indictment fully and adequately set out the essential elements of the federal offense and fairly provided sufficient notice to defendants of the government's charges. See Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. McGhee, 488 F.2d 781 (5th Cir. 1974); United States v. Figueredo, 350 F.Supp. 1031 (M.D.Fla.1972); 1 C. Wright & A. Miller, Federal Practice and Procedure 123-25 (1969).
 
 The decision of the district court is
 
 18
 Affirmed.
 
 
 
 [1]
 On the night of the FBI raid, defendant McEarchern had allegedly become sick and was asleep in an adjoining trailer while four of his co-defendants continued to conduct the business in his absence
 
 
 [2]
 Congress deleted the word 'participate' from the original wording of the statute. The legislative history shows that the language was deleted because the word 'participate' might be construed so as to include mere bettors in making up the statutory five persons required for a conviction under the Act. The language 'involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business,' was used instead of 'participate.'
 United States v. Bobo, supra, 477 F.2d at 989.
 
 
 [3]
 Contrary to the government's assertion, our recent decision in United States v. Bridges, 493 F.2d 918 (5th Cir. 1974), does not control the issue of statutory interpretation at hand. In Bridges, this court held that 'Congress intended an illegal gambling business, as defined in (1955) (b)(1), to be one which operates with a minimum of five persons for a period in excess of thirty days.' 493 F.2d at 922. We reversed the 1955 convictions of five Bridges defendants as outside the proscriptions of the Act because the fifth confederate was involved in the illegal gambling business for no longer than eighteen days, a period not in excess of that enumerated in 1955(b)(1)(iii). The instant case involved the six defendants for more than the statutorily prescribed period
 
 
 [4]
 The district court also instructed the jury that the evidence demonstrated the gambling business was not licensed as required by Albama state law. We find no error in this charge. See United States v. Thaggard, 477 F.2d 626, 631 (5th Cir. 1973); see also United States v. Romano, 482 F.2d 1183 (5th Cir. 1973)
 
 
 [5]
 The indictment charged, in pertinent part, that the defendants 'did knowingly and willfully conduct . . . an illegal gambling business, to-wit, a business for placing bets on dice and cards, . . . said business being in substantially continuous operation for a period of time in excess of 30 days and involving five or more persons in its conduct, management, supervision and direction, being in violation of the Code of Alabama, Title 14, Section 265; all in violation of Title 18, United States Code, Section 1955.'
 Code of Alabama, Tit. 14, 265 (Recomp.1959) provides:
 Keeping gaming table.-- Any person who keeps, exhibits, or is interested or concerned in keeping or exhibiting any table for gaming, of whatsoever name, kind, or description, not regularly licensed under the laws of this state, shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than two hundred dollars nor more than five hundred dollars, and shall also be sentenced to hard labor for the county for not more than twelve months, and on a second or any subsequent conviction, shall be imprisoned in the penitentiary for not less than two nor more than five years.
 
 
 [6]
 18 U.S.C.A. 1955(b)(1)(i) (Supp.1974)