**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Norman HAWES, Albert Julius Hawkins, Robert Wesley Dean, Charles O. Borum, David Foshee, Charles F. Floyd, George J. Fay, and Joseph David Hawes, Defendants-Appellants.**

No. 75–1695.

United States Court of Appeals, Fifth Circuit.

March 29, 1976.

Rehearing Denied May 5, 1976.

474

Before BROWN, Chief Judge, GEWIN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Eight criminal defendants join in this multifaceted appeal from their convictions for conspiracy to participate in an illegal gambling enterprise, 18 U.S.C.A. § 1962(d), and from convictions of various defendants for conducting four separate but interrelated gambling businesses in violation of 18 U.S.C.A. § 1955. The case involved the manufacture, sale, rental and operation of coin-operated electrical machines used for gambling. Defendants challenge the constitutionality of the relevant statutes, both as enacted by Congress and as applied in this case; urge errors of statutory interpretation and application; challenge various aspects of the conduct of their trial, including errors in the jury charge and in a supplemental instruction; and argue insufficient probable cause for issuing a search warrant which resulted in the seizure of important evidence. One defendant questions the sufficiency of the evidence which supports his conviction. We hold for the Government on all issues, affirming all convictions.

Denmark Groover, Jr., Macon, Ga., for all defendants-appellants except Joseph Hawes.

Clinch Heyward Belser, Charles E. Baker, Columbia, S. C., for Joseph David Hawes.

Ronald T. Knight, U. S. Atty., O. Hale Almand, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

## I. FACTS

This case involves a six count indictment returned against ten defendants, charging them with operation of an illegal gambling business and conspiracy. Count One charged that W. Hawes, Hawkins and Dean constituted a gambling "enterprise," as defined by 18 U.S. C.A. § 1961(4),[1] and engaged in "a pattern of racketeering activity"[2] affecting interstate commerce, which activity is il-

---

1. 18 U.S.C.A. § 1961(4):

"enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

2. 18 U.S.C.A. § 1961(5):

"pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

legal under Georgia gambling laws and is therefore in violation of 18 U.S.C.A. § 1955.[3] That count alleged the defendants utilized their interest in four different business entities in furtherance of the gambling activities of the enterprise. Count Two charged all defendants with conspiracy to violate 18 U.S.C.A. § 1962 (c).[4] Such conspiracy being violative of 18 U.S.C.A. § 1962(d).[5] Counts Three through Six charged various combinations of the defendants with substantive violations of 18 U.S.C.A. § 1955 through associations with each of the four business entities involved.

W. Hawes, Hawkins and Dean owned and operated Peach State Distributing Co., doing business as Peach State Music Co., in the manufacture, sale, repair and lease of a variety of coin-operated electronic games. In addition to legitimate devices such as jukeboxes and penny arcade amusements, Peach State marketed devices known as "Flashback" and "Red Arrows," electronic pinball and slot machine games of chance which awarded "free" games to lucky players. Unlike the "one-armed bandit" used in Las Vegas, Peach State's devices did not pay off in cash. But a lucky player who did not choose to play his "free" games in the hope of greater winnings could cash in his winnings, receiving the cash value of the free games won from the club or establishment where the devices were located.

Peach State distributed its gambling devices through four jointly owned business entities. Ace Amusement Co., a subsidiary of Peach State, placed devices in middle Georgia men's clubs. Ace was divided into routes with "route men" responsible for supervising maintenance and dividing revenues with the clubs. Bann Equipment Co., d/b/a Star Music Co., and the Club Music Co. leased equipment which they placed in bars and social clubs. Finally, a nightclub, the Golden Cadillac Club, leased electronic gambling machines and organized card games such as poker and keno.

## II. CONSTITUTIONAL ISSUES

### A. The Constitutionality of 18 U.S. C.A. § 1955: The Commerce Clause

■ The defendants urge this Court to reexamine and overrule *United States v. Harris*, 460 F.2d 1041 (5th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972), which held that Congress acted within its power under the Commerce Clause in promulgating 18 U.S.C.A. § 1955. *See also United States v. Marrifield*, 496 F.2d 1278 (5th Cir. 1974); *United States v. Pacheco*, 489

---

**3.** 18 U.S.C.A. § 1955:

*Prohibition of illegal gambling businesses.*
 (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
 (b) As used in this section—
 (1) "illegal gambling business" means a gambling business which—
 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $20,000 in any single day.
 (2) "gambling" includes but is not limited to pool-selling, book making, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
 (3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

**4.** 18 U.S.C.A. § 1962(c):

 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**5.** 18 U.S.C.A. § 1962(d):

 It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

F.2d 554 (5th Cir. 1974), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975); and *United States v. Thaggard*, 477 F.2d 626 (5th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973). We note that all other courts of appeal that have faced this particular issue have ruled in favor of the statute. *United States v. Becker*, 461 F.2d 230 (2d Cir. 1972), *vacated and remanded on other grounds*, 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208 (1974); *United States v. Riehl*, 460 F.2d 454 (3rd Cir. 1972); *United States v. Hunter*, 478 F.2d 1019 (7th Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973); *Schneider v. United States*, 459 F.2d 540 (8th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972); *United States v. Sacco*, 491 F.2d 995 (9th Cir. *en banc* 1974); *United States v. Smaldone*, 485 F.2d 1333 (10th Cir. 1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974). *See also Annot., Validity, Construction, and Application of 18 U.S.C.A. § 1955 Prohibiting an Illegal Gambling Business*, 21 A.L.R.Fed. 708, 717 (1974). In any event, prior decisions of this Circuit are binding on this panel so we need not reconsider this issue.

### B. *Section 1955: Equality Under the Due Process Clause*

Defendants contend that § 1955 is a denial of equality under the law guaranteed by the due process clause of the Fifth Amendment because it applies only in states where gambling is made illegal by state law. They admit that this argument has been rejected on several occasions. *See United States v. Wolk*, 466 F.2d 1143 (8th Cir. 1972); *Schneider v. United States, supra*, 459 F.2d 540; *United States v. Sacco, supra*, 491 F.2d 955; *United States v. Smaldone, supra*, 485 F.2d 1333. Defendants assert, however, that this Circuit and the Supreme Court have not passed on the question and urge that Congress has not here exercised its power in a manner which comports with the equal protection concepts of the Fifth Amendment.

There is no doubt that the commerce power is subject to the due process clause of the Fifth Amendment. *See Secretary of Agriculture v. Central Roig Refining Co.*, 338 U.S. 604, 70 S.Ct. 403, 94 L.Ed. 381 (1950); *Currin v. Wallace*, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939); *Virginian R. Co. v. System Federation No. 40*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); *Railroad Retirement Bd. v. Alton R. Co.*, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935); *United States v. Chicago, M. St. P. P. R. Co.*, 282 U.S. 311, 51 S.Ct. 159, 75 L.Ed. 359 (1931). It is also now established that the basic concepts of equal protection apply to the federal Government through the due process clause of the Fifth Amendment. *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Thus, the argument goes, the applicability of the statute only to those who conduct "illegal" gambling businesses must meet the rational basis test of equal protection applicable to a statute creating a criminal offense. *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 274 (1972). The defendants then argue that Congress' decision to make only *illegal* gambling the subject of the statute has no rational basis in light of the object of the legislation, *i. e.*, to prevent gambling revenue from flowing into the hands of the organized criminal element. Defendants argue that there is no justifiable basis for the exclusion of legal gambling as a source of revenue for organized crime. Thus, defendants would have us fault Congress for finding that "illegal" gambling furnished a source of revenue for organized crime while ignoring what defendants assert to be an "undoubted and demonstrable fact" that organized crime has infiltrated and receives funds from legal gambling.

While this argument is intriguing, to say the least, it carries little weight. The law is clear that there is no requirement of national uniformity when Congress exercises its power under the Commerce Clause. *See Currin v. Wallace, supra*, 306 U.S. 1, 59 S.Ct. 379, 83

L.Ed. 441; *Secretary of Agriculture v. Central Roig Refining Co., supra,* 338 U.S. 604, 70 S.Ct. 403, 94 L.Ed. 381; *Clark Distilling Co. v. Western Md. Ry. Co.,* 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917). The Constitution is not violated when a federal statute incorporates the laws of the states. *See United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958) (assimilative crimes, 18 U.S.C.A. § 13); *Kentucky Whip & Collar Co. v. Illinois C. R. Co.,* 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270 (1937) (convict-made goods); *Clark Distilling Co. v. Western Md. Ry. Co., supra,* 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (liquor transportation, 27 U.S.C.A. § 122). The argument that there is no rational basis for excluding legal gambling from the "Organized Crime Control Act" falls for the obvious reason that if gambling is legal in a state, there is no crime in the gambling activity and thus no "organized crime" to control. It is not the purpose of § 1955 to prohibit gambling, but only to prohibit "illegal" gambling of such a size as would affect interstate commerce. The defendants forget that they are the organizers of the illegal gambling activities here involved and therefore the organized criminal elements targeted by Congress. The flow of funds from illegal gambling to the organized criminal element is obvious because to organize and conduct a criminal enterprise by definition channels profits to the organized criminal element, while the operation of a legal gambling business does not necessarily generate profits for those who are otherwise engaged in criminal activity. We reject the argument that Congress had no rational basis in acting against illegal gambling activity while staying its hand on otherwise legal activity.

### C. *Section 1955: Vagueness*

Defendants argue that § 1955, as applied in Counts Three, Four and Five of the indictment, is unconstitutionally vague because the conduct prohibited cannot be fairly determined. They argue that § 1955 did not put them on fair notice that violations of Ga.Code Ann.

§§ 26–2704 and 26–2707 would constitute a federal violation. Section 1955 is directed against anyone who "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business . . . which is a violation of the law of a State . . . ." Defendants argue, without citation of authority, that § 1955 proscribes the act of gambling which is carried on as a business operation, *i. e.,* they argue that defendants must be gamblers as well as business operators. Since Ga.Code Ann. § 26–2704 defines the offense of "keeping a gambling place," and § 26–2707 makes it an offense to knowingly own, manufacture, transfer, or possess a gambling device, defendants would have us find that violations under these state provisions do not constitute illegal gambling, and hence are not indictable under 18 U.S.C.A. § 1955.

We are unable to agree with this strained interpretation of an "illegal gambling business." Even upon a strict construction of the statutory language, *United States v. Bridges,* 493 F.2d 918 (5th Cir. 1974), we find no requirement that defendants must themselves engage in the act of illegal gambling in order to operate a gambling business. The definitional portion of § 1955 supports our holding: "gambling includes but is not limited to . . . maintaining slot machines . . . ." 18 U.S.C.A. § 1955(b)(2). Moreover, this Court has indicated that the term "gambling business" is one of "common understanding." *United States v. Crockett,* 506 F.2d 759, 762 (5th Cir. 1975). Keeping a gambling place, and maintaining gambling devices, are clear, logical and salient features of conducting an "illegal gambling business."

### D. *Section 1962(c): Vagueness in the Application*

The defendants' attack on Counts One and Two of the indictment focuses on the meaning of the term "enterprise" as defined by 18 U.S.C.A. § 1961(4) and as used in 18 U.S.C.A. § 1962(c). The latter section reaches "any person employed by

or associated with any enterprise . .." who participates in the "enterprise's affairs through a pattern of racketeering activity . . . .." Defendants point to legislative history indicating that Congress designed Title IX of the Organized Crime Control Act to eliminate the infiltration of legitimate businesses, and from this they argue that the enterprise must be distinct from those persons associating with it. That is to say, persons who by their association constitute an enterprise may not be indicted for associating with that enterprise. Finally, defendants state that a person reading the statute would not be put on notice that the term "enterprise" would include those who participate in the affairs of their own organization, and therefore the statute as applied is vague.

 We cannot agree with this line of reasoning. In its classic formulation of the standard for establishing unconstitutional vagueness, the Supreme Court held that a penal statute "must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." If "men of common intelligence" must guess at the meaning of a statute, the statute violates due process of law. *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). *See also Palmer v. Euclid,* 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971); *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Cramp v. Board of Public Instruction,* 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). By this standard, quoting from § 1962(c), we hold that "any person" of average intelligence, on a clear reading of that statute, together with relevant definitional provisions, could not help but realize that they would be criminally liable for participating in "any enterprise," including their own, "through a pattern of racketeering activity."

## III. STATUTORY INTERPRETATION

### A. The "Enterprise" Described in Counts One and Two of the Indictment Falls within § 1962(c)

██ As a variation of the foregoing argument, defendants contend that Peach State Distributing Co., Bann Equipment Co., the Golden Cadillac Club, Club Music Co., and Ace Amusement Co., the organizations named in Counts One and Two of the indictment, were not enterprises contemplated by 18 U.S.C.A. § 1962(c). Their argument centers on the foregoing assertion that only legitimate business enterprises were reached by the statute. In rejecting this construction of 18 U.S.C.A. § 1962(c), we agree with the Seventh Circuit that Congress gave the term "enterprise" a very broad meaning. *United States v. Cappetto,* 502 F.2d 1351, 1358 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). *See generally United States v. Parness,* 503 F.2d 430 (2d Cir.), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975); *United States v. Campanale,* 518 F.2d 352 (9th Cir. 1975). First, we note that the scope of legislative purpose is broader than defendants would have us believe. *United States v. Cappetto, supra,* 502 F.2d at 1358. Additionally the definition of "enterprise" contained in § 1961(4), and of "racketeering activity" in § 1961(1)—both terms being used in § 1962(c) to describe illegal activity—clearly go beyond the scope of legitimate business activity.

### B. Applicability of Ga.Code Ann. §§ 26–2704 and 26–2707

██ Defendants recast their vagueness argument, discussed in part II. B. *supra,* by asserting that as a matter of statutory construction, the Georgia Code provisions supporting Counts Three through Five of the indictment are not embraced by 18 U.S.C.A. § 1955, which prohibits the operation of an "illegal gambling business." For the reasons

given above we reject this argument, and note that Ga.Code Ann. § 26–2704 and similar provisions have previously been applied to 18 U.S.C.A. § 1955 by this Court in a case involving a very similar gambling operation. *See United States v. Crockett, supra,* 506 F.2d 759.

### C. *The Jury Charge and the Definition of "Enterprise"*

█ The court charged the jury that the gambling enterprise described in Count One of the indictment could consist of fewer individuals than those who, under the indictment, were said to have constituted the enterprise (W. Hawes, Hawkins and Dean). Count Two charged various defendants with conspiracy to participate in the affairs of this enterprise in violation of 18 U.S.C.A. § 1962(c). Defendants submit that this jury charge erroneously permitted the jury to base conviction on facts which were materially at variance with those alleged in the indictment.

█ An indictment is required to set forth the elements of the offense charged, so that defendants are sufficiently apprised of the charge which they must prepare to meet. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *United States v. Fischetti,* 450 F.2d 34 (5th Cir. 1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972). Count One of the indictment set forth the allegation that W. Hawes, Hawkins and Dean "constituted an enterprise as defined by Title 18, United States Code, Section 1961(4)." Under that definitional statute an enterprise may consist of "any individual" as well as "any . . . group of individuals." The above described jury charge merely instructs the jury on federal law. It does not alter the elements established by the indictment. We hold, therefore, that the trial judge was informing the jury of the applicable law, as delineated in the indictment, and the judge in no way materially varied the facts set out in the indictment.

### IV. VALIDITY OF THE SEARCH WARRANT: PROBABLE CAUSE

Defendants broadly challenge the legality of the search warrant which was the basis of the search that yielded most of the Government's evidence. FBI Special Agent Ted R. Ping obtained the warrant on the basis of a 20 page affidavit, in which he thoroughly outlined the gambling operation, including a description of customers, corporate interrelationships, business practices and employees. The affidavit identifies six confidential sources and the basis for their knowledge, as well as two other sources: a former policeman and an Assistant United States Attorney.

Defendants argue that the affidavit is insufficient to establish probable cause, in that the statement: (1) set forth insufficient underlying facts; (2) contained factual misrepresentations; (3) contained stale information; (4) contained hearsay; (5) linked several purported violations to organizations which are exempted by 18 U.S.C.A. § 1955(e). Defendants suggest that the basic problem with the affidavit is that, although it contains a wealth of information and assertions, there is no common thread which ties the information together sufficiently to give rise to probable cause that the statutes were being violated.

█ Before a valid warrant may issue, an affidavit must be submitted to the court setting forth the necessary facts and circumstances whereby the judge may determine probable cause. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). The affidavit supporting the search warrant here amply demonstrated probable cause to believe that the defendants' gambling enterprise violated § 1955. *Cf. United States v. Marrifield, supra,* 496 F.2d 1278. *See also United States v. Thomas,* 489 F.2d 664 (5th Cir. 1973), *cert. denied,* 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975); *United States v. Horton,* 488 F.2d 374 (5th Cir. 1973); *United States v. Guinn,* 454 F.2d 29 (5th Cir.), *cert.*

*denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972).

 In the context of purporting to show that the search warrant was obtained without probable cause, defendants argue that the American Legion and the Moose Club, with which Peach State did business, are tax exempt organizations under 26 U.S.C.A. § 501(c)(3), and as such were exempt under the 18 U.S.C.A. § 1955(e) exemption of the conduct of games of chance by tax exempt organizations. Defendants are simply wrong as a matter of tax law. These private organizations are not exempt from taxation as charitable, religious or educational § 501(c)(3) organizations, but rather are exempted by §§ 501(c)(8) and 501(c)(19).

## V. THE JURY CHARGE

### A. *The Jury Charge and Ga.Code Ann. § 26–2707*

The first contention made against the jury charge—that the jury was improperly instructed as to Ga.Code Ann. § 26–2707—is a restatement of the constitutional and statutory issues discussed in parts II. C. and III. B. of this opinion. For the reasons given above, we reject this attack on the jury charge.

### B. *The Jury Charge and Scienter*

 The appellants contend that Counts Three through Six are deficient for failing to instruct the jury that as an element of a § 1955 violation the accused must have had knowledge that his conduct violated state law. We have previously held that § 1955 and related statutes "do not condition guilt upon knowledge that a federal law has been violated. It is sufficient that appellants intended to do all of the acts prohibited by the statute and proceeded to do them." *United States v. Thaggard, supra,* 477 F.2d at 632. *See also United States v. Iannelli,* 477 F.2d 999 (3rd Cir. 1973), *aff'd,* 417 U.S. 907, 94 S.Ct. 2602, 4 L.Ed.2d 211 (1975); *United States v. Brick,* 502 F.2d 219 (8th Cir. 1974); *United States v. Smaldone, supra,* 485 F.2d 1333. Section 1955 incorporates state law by reference to describe those gambling businesses which are violative of federal law. The *acts* which must be intended under the *Thaggard* rule include conducting, financing, managing, supervising and owning an illegal gambling business. 18 U.S.C.A. § 1955(a). Thus intent to violate state law is not a necessary element of a § 1955 crime. There was no error in the jury charge.

## VI. *ARGUMENTS PERTAINING TO DEFENDANT JOSEPH HAWES*

### A. *Sufficiency of Evidence Supporting the Conspiracy Count*

William (Dyke) Hawes emerges as the principal owner and the mastermind of the entire gambling network. He served as president of Peach State Distributing Co., the central business organization which owned, serviced, leased and sold the gambling devices in addition to operating routes under the business name of Ace Amusement Co. This defendant held an ownership interest in and a corporate office with the Golden Cadillac Club; he also owned in part both Bann Equipment Co., d/b/a Star Music Co. and the Club Music Co. Dyke Hawes was indicted and convicted under all six counts and was sentenced to five concurrent sentences of five years each.

His son, Joseph, a man of about 30 years of age, played a less important role in the gambling operation. At the trial Joseph was described as a "change man" or "route man," working in the field for the Ace Amusement Co., subsidiary of Peach State. A "route man" placed devices in private clubs, from time to time he would collect money from the machines, and after deducting payouts and state taxes would divide the net return with the private clubs on the basis of a prearranged percentage. The route man kept business records and supervised maintenance.

Joseph Hawes was indicted and convicted for conspiracy to violate 18 U.S.C.A. § 1962(c) under Count Two and for conducting a § 1955 gambling business

under Count Three. He received two concurrent three-year sentences.

It was the Government's theory that Dyke Hawes was grooming his son Joseph to take over the gambling business. To show that Joseph Hawes was more than a routine employee, the prosecution introduced evidence showing that he trained other route men, supervised Peach State employees, and helped keep bookkeeping worksheets for Ace and Peach State which contained entries pertaining to transactions with Star Music Co. and other customers. They also point to the circumstantial inferences which follow Joseph's filial relationship with Dyke. On appeal, the parties essentially disagree over whether the evidence shows that Joseph had the knowledge of the conspiracy which is necessary for a conspiracy conviction.

■■■■ Although the evidence of Joseph Hawes' participation in the conspiracy is not as extensive as is the evidence with respect to other of the criminal defendants, he comes to this Court bearing a weighty burden. On appeal from a conviction we must view the evidence in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 62, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Crockett,* 514 F.2d 64, 75 (5th Cir. 1975). Participation in a criminal conspiracy may be shown by circumstantial evidence. *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); *Park v. Huff,* 506 F.2d 849, 859 (5th Cir. *en banc*), *cert. denied,* 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975). A party's stake in a conspiracy is relevant to the question of his or her participation. *Direct Sales Co. v. United States,* 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943). Conspiracy is almost always a matter of inference deducted from the acts of the accused. *Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

■■■ In view of the foregoing standard of appellate review of evidence in a trial court conviction, and in light of the copious evidence showing the existence of a common criminal scheme, we hold that the evidence is sufficient to establish Joseph Hawes' participation in and knowledge of the criminal conspiracy, and therefore the conviction under Count Two must stand.

### B. *Sufficiency of the Evidence: § 1955 Violation*

Joseph Hawes further argues, in essence, that the evidence did not prove him to be significantly enough involved in the illegal gambling business to support conviction under 18 U.S.C.A. § 1955. We note, however, a distinction between the depth of one's involvement in a gambling enterprise, and the sufficiency of the evidence showing involvement. This Court has previously noted that

Congress' intent was to include all those who participated in the *operation* of a gambling business, regardless how minor their roles . . . . .

*United States v. Marrifield, supra,* 496 F.2d at 1281, *quoting United States v. Becker, supra,* 462 F.2d at 232. Viewing the evidence in the light most favorable to the Government, we find there to be sufficient evidence and therefore sustain the jury's conviction.

### C. *Supplemental Jury Charge*

Defendant Joseph Hawes charges error in the trial court's failure to restate the knowledge requirement for conspiracy when the court gave the jury supplemental instructions at the jury's request. The supplemental charge responded to a note presented by the jury to the court which read:

Do we understand correctly that a person must be guilty of two of the charges in Counts 3, 4, 5 and 6, before being convicted on Counts 1 and 2?

The court gave an additional charge in answer. Attorneys for Joseph Hawes then requested an additional supplemental instruction to the effect that it would be necessary that the defendant Joseph Hawes know that the plan of the conspiracy was as alleged in the indictment. Defendant Hawes now cites error in the court's failure to give the requested

charge, relying primarily on the principles as set out in the case of *Bland v. United States,* 299 F.2d 105 (5th Cir. 1962). The *Bland* case held that when the jury requests further instructions on points which are favorable to the Government, the trial court should repeat instructions favorable to the defense where the requested instructions taken alone might leave an erroneous impression in the minds of the jury. This principle was reaffirmed in the case of *United States v. Carter,* 491 F.2d 625 (5th Cir. 1974).

 The court in its initial charge gave a full and complete explanation on the law of conspiracy. At the beginning of the supplemental charge to the jury, the court very clearly explained to the jury that they must consider all the court's instructions, not just the additional elements given in the supplemental charge. The court again explained the necessary elements that must be found before anyone could be found guilty of conspiracy.

Viewing the main charge and the supplemental charge as a whole, *United States v. Carter, id., United States v. Jackson,* 470 F.2d 684, 688 (5th Cir.), *cert. denied,* 412 U.S. 951, 93 S.Ct. 3019, 37 L.Ed.2d 1004 (1973), we cannot say that the supplemental instruction taken alone would leave an erroneous impression in the minds of the jury.

## CONCLUSION

Upon a full examination of the record and consideration of the arguments of counsel, we are satisfied that all convictions in this case are constitutionally, statutorily and procedurally sound. The jury verdict is in all respects

Affirmed.